## Farrar *vs.* Peter Chauffetete and Francis Chauffetete.

Machinery erected for manufacturing purposes on timbers imbedded in the ground, or fastened to the timbers of a building by bolts, screws, pins or cleats, if put up with a view to its being removed without injury to the building, is not a *fixture* passing with the freehold.

The rule as to *fixtures* between the owner and purchaser at a sheriff's sale, is the same as between vendor and purchaser at private sale.

The *motive power* by which the machinery is to be operated, is a circumstance which may determine the question whether it is a fixture, in some cases. *Semble.* Per Whittlesey, J. (a.)

In trover, a slight agency on the part of a defendant in resisting the claim of the owner, is sufficient to sustain a recovery.

Trover for a horse power and machinery connected with it for making pumps. The action was tried at the Jefferson circuit in June, 1845, before Gridley, Cir. Judge.

The horse power and machinery were erected by John L. Farrar. He owned a small farm upon which was a building within which the whole was placed. The horse power was a large horizontal wheel in the basement of the building, which turned on an iron pivot driven into the centre of two large sticks of timber crossing each other at right angles and imbedded in the ground. The rest of the machinery was fixed in the building partly by timbers imbedded in the earth, and partly by being fastened to the frame and floors by bolts, screws with

---

(a) See *Cook* v. *Champlain Trans. Co.*, (1 *Denio*, 102.)

nuts, and cleats. Its connection with the horse power was by means of belts and gearing. The evidence showed in detail the precise manner in which the whole was done. It also showed that it "was not affixed to the building except so as to be detached from it without drawing nails or breaking bolts; pins or other things; that it was put up for manufacturing purposes after the building was erected, with the view, and in such manner as to permit it to be detached and taken out at pleasure without injury to the building or any part of it." In June, 1843, the farm on which the building stood was sold upon execution against John L. Farrar, and after the title upon the sale was perfected, the purchaser conveyed it to the defendant Peter Chauffetête. In November, 1844, the horse power and machinery were sold upon another execution against John L. Farrar to one Harger, who transferred it to the plaintiff Loyd B. Farrar. He went to remove it, and while taking it down the defendants came to the building. Peter Chauffetête was the father of Francis. He could not speak English. He would talk to Francis in French, and shake his head and appear very angry, while Francis would in English forbid the plaintiff removing the machinery. On a subsequent attempt to remove it, Francis came to the building and told plaintiff his father sent him to forbid its removal. The circuit judge charged the jury, "That if they believed the defendants were acting together in the preventing or refusal to allow the plaintiff to take away the machinery, or that Francis was acting as the agent and interpreter and by the direction of Peter, then the evidence established a conversion : and second, If the machinery was fastened to the building by nails or pins, or by tenons pinned into mortices so that it could not be removed without injury to the building, they should find for the defendants. But that in order to constitute machinery fixtures annexed to the freehold, so as to be regarded as real estate, for the purposes of this suit, it was not enough that it was secured by bolts, screws or pins, provided they could be detached without drawing nails, &c. but by unscrewing a nut and drawing a bolt, and when it was made to be taken down and removed ; and if they

Farrar *v.* Chauffetête.

were satisfied from the evidence that this machinery was so fastened by wedges, bolts and nuts, as to be removed without drawing nails or injuring the building, that then it was personal property and subject to a levy and sale upon the execution, and they would find for the plaintiffs so far as that question was concerned." The defendant's counsel then required the circuit judge to charge, "That if the machinery was put into the building for the purpose of manufacturing pumps, and was annexed to it by bolts and screws, or by mortices and tenons, or by straps or by braces at one or both ends, that made the machinery fixtures, and therefore a part of the freehold." This the circuit judge refused to do without the explanations and modifications before expressed. The defendant's counsel excepted to both points of the charge. The jury found a verdict for the plaintiff.

*C. P. Kirkland,* for defendants.

*W. Tracy,* for plaintiff.

*By the Court,* WHITTLESEY, J. There are but two questions made by the bill of exceptions. The important one relates to the character of the property in controversy, whether it is personal, or so connected with the freehold as to be properly called a fixture. The defendant, Peter Chauffetête, is the grantee of the purchaser of the real estate under an execution; the plaintiff the assignee of the purchaser of the personal property under an execution against the same party. The title of the defendant is the eldest, and if the property in controversy is so attached to the freehold as to be a fixture, he is entitled to it. If not a fixture, the plaintiff has the title under the sale of it as personal property. The defendant Peter stands in the place of a purchaser of the real estate at a sheriff's sale. This is a sale by the owner through the instrumentality of the sheriff, and the doctrine in regard to fixtures applicable to it is that which governs between vendor and purchaser. The whole doctrine upon the subject has recently been elaborately exam-

ined in this court, and a very large number of cases referred to and commented upon in *Walker* v. *Sherman*, (20 *Wend.* 636.) The cases are certainly not harmonious, and it is difficult to extract from them a precise and satisfactory rule applicable to the various cases that arise. In the case before us it does not appear that the building was erected for the purpose of placing in it the machinery ; but that being built, the owner placed it in so that it could be removed from it without injury. The foundation of the machinery seems to have been timber imbedded in the ground, but not connected with the building, while some parts of the machinery were attached to the timbers by bolts, nuts, cleats, tenons and mortices, held together by pins, and in some parts by nails and braces. It is, I think, a circumstance worthy of observation, that the main wheel which moved the machinery, was itself no more, and I think not as much attached to the building as the other machinery, while the motive power for the wheel was not dependant upon or attached to the building, but wholly separate from it, and capable of being removed with the machinery and applied to it when placed in another building. All the circumstances make a different case from that of a mill erected for the purpose of placing machinery in it with a driving wheel, making a part of the building, and a dam to raise a head of water for motive power ; so different that I can suppose they would vary the principle of the rule as between vendor and vendee, and that it might happen that what would be properly held fixtures in the one case, might, under the same circumstances of attachment, be held personal property in the other. As an illustration, a threshing machine attached to the timbers of a barn by bolts and nuts or cleats, and moved by a horse power, and capable of being taken away without injury to the building, I think would not pass by a deed of the farm on which the barn stood. If, however, the machine was attached in precisely the same manner, but operated by a water-wheel, fixed to the building, and moved by hydraulic power, conducted for the purpose to the building, the machine might pass by a deed of the farm. So if a tobacconist should place in a store already erected, a steam engine and

Farrar v. Chauffetête.

machinery, the former on timbers embedded in the ground, and the latter fastened to the building by bolts and cleats, I think the engine and machinery would hardly pass by a deed of the freehold. But if the building were originally erected for the purpose of placing in it the engine and machinery, and afterwards the building enlarged for the purpose of storing the manufactured article, the whole would probably pass by a deed of the soil. These illustrations are used to show that each case must in some degree depend upon its own circumstances: that the principles applicable as between vendor and purchaser, must vary with the varying circumstances of each case. The question of intention enters into and makes an element of each case. The circumstances are to be taken into account to show whether the erections were made for the permanent improvement of the freehold, or for the temporary purposes of trade. When, therefore, a legal doctrine is advanced for the government of a jury, we must examine the circumstances of the case to ascertain whether it is applicable to them. In the class of cases to which the one before us belongs, the legislature has undertaken to settle the conflict between hostile decisions, and establish by statute a rule deemed the proper one. By 2 *R. S.* 24, § 6, *sub.* 4, (*2d ed.*,) it is enacted that things annexed to the freehold or to any building for the purpose of trade or manufacture, and not fixed into the wall so as to be essential to its support, pass to the executor. This establishes the rule between heir and executor, and goes at least as far as the most liberal decisions had before gone in favor of executors, and does not certainly indicate a legislative intent to enlarge the rights of freehold. Before these statutes the rule between vendor and purchaser was precisely the same as between heir and executor; and although the legislative provision does not extend the case of vendor and purchaser, yet it may be fairly referred to as indicating a species of legislative construction of principles embarrassed by conflicting decisions. It is not a settlement of the law in the precise case before us, yet it is in some sort an indication of the manner in which the legislature thinks the law ought to be settled. As between landlord and tenant, by re-

peated adjudications, and as between heir and executor by the statute cited, the property in controversy would clearly be pronounced personal property. And looking at the particular circumstances of this case, I think the instructions of the circuit judge as applicable to them were free from error, and the rule he laid down the correct one for the government of the jury. There may be other cases where the manner of the attachment of the machinery to the building would be precisely similar to that in the present case, and yet their circumstances may render the principles properly applicable here entirely inapplicable to them. All I mean to say, and all that it is proper to say, is that the instructions given were proper for this case.

Upon the other points, as to the liability of both defendants, the circuit judge gave the proper instructions. A very slight agency or interference will make one liable in trover.

New trial denied.