JOSIAH S. BREESE and another v. FREDERICK BANGE.

An assignment, by the lessee to the lessor, of all the right, title, and interest of the former in a lease, as collateral security for the payment of notes to mature before the expiration of the term, and also for the payment of any demands the lessor may, after such assignment, have against the lessee for merchandise or otherwise, is not a surrender of the lease and a merger of the term, working a dissolution of the relation of landlord and tenant.

Such an assignment, being not an absolute but conditional transfer, subject to be defeated, before the expiration of the term, by the performance of the conditions, is a mortgage.

An assignment of a leasehold interest carries with it the unexpired term, and necessarily includes all erections upon the land, whether for manufacturing purposes or otherwise, unless it is apparent that such was not the intention of the parties to the assignment.

The law favors the claim of a tenant to fixtures erected by him upon the land for the purposes of trade and manufacture, and with a view to their removal.

But the rule in respect to what must be deemed a part of the realty, is more strictly applied as between mortgagor and mortgagee.

In the latter case, whatever is attached to the land, to be habitually used and enjoyed therewith, whether for the purposes of trade and manufacture or not, passes with the freehold as a part of the mortgage security.

Where buildings and fixtures, erected by a tenant upon land, were designed for and adapted to machinery, to be moved by water power flowing over the land, the use whereof was specially granted in the lease; it was *held*, that these facts were of themselves sufficient to determine that an assignment by the tenant of his interest in the lease to the owner, by way of *mortgage*, included the erections above mentioned, together with the land.

The act providing for the *filing* of mortgages, (2 Revised Statutes, 3d ed., p. 196, §§ 9 and 10,) relates only to personal property, and has no application to a mortgage of an interest in real estate.

Leases and assignments, or mortgages thereof, relating to lands in Ulster county, in this state, are not required to be recorded under the provisions of the Revised Statutes.

A sheriff's sale, under execution, of an interest in a lease, for a term of which more than five years remain unexpired, and fixtures forming a part of a freehold estate, in the same manner as is provided in respect to personal property, with a notice of only six days, is void.

Although, as a general rule, an irregularity in the judgment or in the issuing of the execution, will not affect the title of a *bona fide* purchaser without notice; yet an omission by the sheriff, to give the requisite notice of the sale, or to have the property within view of those in attendance, or to offer it in

Breese *v.* Bange.

parcels as required by the statute, or selling real and personal property together in one lot, invalidates the sale. (*a*)

Where, as the foundation of an action in the nature of trover, demand was made of articles, which at the time were in a remote place, and the defendant, after stating that he was unwilling to do any thing in the matter until he could consider of it, requested a copy of an inventory of the articles, which was thereupon promised, but was never furnished; *held*, that the demand and refusal were insufficient as evidence of a conversion.

THIS was an action in the nature of trover, to recover $11,000, as the alleged value of an extended list of articles, enumerated in a schedule annexed to the complaint. The property consisted chiefly of the machinery employed in an iron and anchor manufactory; but the list contained some manufactured articles, with bars and anchor iron, and also a coal house, barn, office, and a building or shop 150 feet in length by 45 feet wide. These were all included in the inventory of personal property, with a *conversion of which* the defendant was charged.

The complaint alleged ownership and right of possession in the plaintiffs; actual possession in the defendant; and demand, refusal to deliver, and conversion, with averment of value. The answer simply put in issue the plaintiffs' allegations.

The following statement of facts was embodied in the report of a referee, before whom the cause was tried, to wit:

"That on the 26th October, 1847, the defendant, by deed between himself and Leonard Hunt, leased to Hunt, for the term of ten years, certain premises in Naponoch, Ulster Co. The defendant, among other things, therein agreed to advance Hunt $2,500, to be expended by Hunt in buildings and improvements on the premises. "Hunt agreed to pay, and gave his notes to Bange for, $2,710, payable 26th February and August, 1849. "He also agreed to pay $200 per annum rent, and also pay the taxes and assessments, and cause the buildings, machinery and fixtures to be insured for a certain amount therein specified, and keep the policy

(*a*) See *Bruce* v. *Westervelt, ante,* p. 440.

renewed for the benefit of the defendant. "There were also covenants on the part of the defendant, that at any time within nine years and six months from date, on payment of $2,500, he would give to Hunt a warranty deed of the premises, and that at the expiration of the term, if the lease should not be renewed, at the option of Hunt, and if the latter should not have purchased the premises, it should be lawful for Hunt to remove the buildings, fixtures and machinery, that he may have erected, provided the same should be removed within ten days after the expiration of the lease. " It was also covenanted therein, that if the sums to be paid by Hunt on 26th of February and August, 1849, should not be paid, or if at any time any of the rent should remain unpaid for thirty days after the same should have been paid, the defendant might proceed by ejectment or re-entry for recovery of the possession of the premises as of his own and former right.

"That Hunt, afterwards, by an instrument dated the 30th of May, 1848, executed on the back of the above lease, after reciting that he had given to Bange two notes amounting to $1,551 69, payable on the 1st and 16th May, 1849, assigned to Bange the said lease as collateral security for the payment of those notes, and any demands which Bange might thereafter have against him for goods, wares and merchandise.

"That it does not appear that the above instruments, or either or any copy thereof, were ever filed in any clerk's office.

" That Hunt went into possession of the premises under and pursuant to said lease, and placed and built thereon various tools and machinery for the manufacture of iron and anchors, and erected certain buildings, in which the tools and machinery were placed.

" That on the 11th of September, 1848, Hunt executed to Albert D. Bishop a chattel mortgage of the buildings, machinery and tools mentioned in the schedule annexed thereto, to secure $515 36 on the 13th October, 1848, and $616 38

on the 13th November, 1848. "The schedule designates various articles placed on said premises by Hunt. "The above mentioned sums have never been paid. "It does not appear that the above instrument, or any copy, was ever filed in any clerk's office. "Bishop, shortly afterwards, and in September, 1848, took possession of the property so mortgaged to him, and remained in possession thereof until the sheriff sold the same, as hereinafter mentioned.

"That on the 14th September, 1848, Bishop recovered a judgment against Hunt, in the Supreme Court, for $1,138 19. "That the plaintiffs, on 21st September, 1848, recovered judgment also against Hunt, in the Supreme Court, for $673 16. "That the plaintiffs also recovered against Hunt, and one Slocum, a judgment in the New York Common Pleas for $1,128 41. "That said judgments were docketed in Ulster county, and executions duly issued thereon shortly after they were recovered, to the sheriff of Ulster county, and on the 8th of November, 1848, the said sheriff sold the property in controversy to the plaintiffs. "That it was agreed, between Bishop and plaintiffs, that the execution of the latter should have preference over his.

"That on the 27th March, 1850, Hunt and Bishop, by an instrument in writing, sold, in consideration of $1, all their right and interest in the property so mortgaged by Hunt to Bishop, to the plaintiffs in this suit.

"That the property in question remained on the premises of the defendant, and was in his possession in April, 1850, when a demand was made of its possession by the plaintiffs.

"And that the value of the said tools and machinery so in possession of the defendant is and was $1,500."

The lease from the defendant to Hunt, mentioned in the above statement, contained a full grant of water rights and privileges, with reference to a supply of motive power to the machinery required in the manufacture of iron.

The instrument endorsed upon the lease by Hunt, the lessee, and relied upon by the defendant to sustain his title to the property, was in these words:

"Whereas, I have executed to Frederick Bange my promissory note for six hundred and ninety-five $\frac{5}{100}$ dollars, for value received, payable to his order four months from the first instant, at the Seventh Ward Bank, as also another note for eight hundred and fifty-six $\frac{13}{100}$ dollars, payable as above, at six months, from the 16th day of March last: "Now, therefore, in consideration of one dollar to me in hand paid by the said Frederick Bange, I hereby assign, sell, transfer and set over to the said Frederick Bange, all my right, title and interest in and to the within agreement, as a collateral security for the payment of the said notes, and also for the payment of any demands the said Bange may hereafter have against me for goods, wares and merchandise, or otherwise. "Dated, in the city of New York, this thirteenth day of May, 1848. "Witness my hand and seal.

"LEONARD HUNT."

"Witnessed," &c.

The sale under the executions was conducted by the sheriff as a sale of personal property. The preliminary notice was of six days, and the order of sale was, first, certain tools and articles, called loose property ; and secondly, "Hunt's interest in the lease, fixtures, and machinery." There was no sale of the lease or the leasehold premises as chattels real. The defendant was present at the sale, and claimed all the property which was attached to the land.

The property was demanded of the defendant in the city of New York, before the service of process in the suit, the person making the demand holding in his hand at the time the complaint, with the inventory annexed. The defendant stated, that he was unwilling to do any thing in the matter until he could consider of it, and then requested a copy of the inventory, which was promised. Whether the copy was afterwards furnished, did not appear.

The referee's report was in the plaintiffs' favor. Judgment being entered thereon for $1,948 85, the case came up on the defendant's appeal.

*Henry B. Cowles*, for the defendant.

I. The plaintiffs failed to show title or a right to the possession of the property, except to a few articles which were never in the defendant's possession. (1.) The plaintiffs got no title to the fixtures under or by virtue of the chattel mortgage. (*a.*) Until removed they were part and parcel of the realty, and could be conveyed or mortgaged only by an assignment or mortgage of the lease and term. (*b.*) The chattel mortgage was merged by the judgment against Hunt, which was confessed by him for the same indebtedness for which the chattel mortgage was given. (*c.*) If not so merged, Bishop relinquished all right to the property under the mortgage, and waived any lien he may have had. (*Butler* v. *Miller*, 1 Denio, 407; *Ib.* 5 Denio, 150; *Ib.* 1 Comstock, 496.) (2.) The plaintiffs did not obtain a title to the fixtures by virtue of the sale under the execution. (*a.*) The sale was of personal property only. (*b.*) The lease was for ten years, and at the time of the levy and sale by the sheriff, more than five years of the term still remained. The lease was executed 26th October, 1847, and the sale was November 8th, 1848. It was, therefore, a chattel real, and could be sold only as real estate. (1 R. S. 722, § 5; 2 R. S. 359, § 6; Laws of 1837, p. 540; *Ex parte Wilson*, 7 Hill R. 150.) (3.) The advertisement required by law for the sale of real estate was not given. (2 R. S. 368, § 36 [§ 34]). (4.) There was no severance of the fixtures from the freehold. (5.) The property was sold as *fixtures, &c., eo nomine*, and the plaintiffs were not assignees or representatives of Hunt. They did not, therefore, acquire any right to remove them. (6.) Nor were the fixtures sold as personal property. They were not present and in view of those attending the sale, nor were they sold in parcels, &c., as required by law. (2 R. S. 367, § 25; [§ 23;] *Cresson* v. *Stout*, 17 Johns. R. 116.) (7.) Possession was not delivered to the plaintiffs. They would have been trespassers if they had gone on to the land to remove the fixtures. (8.) All the right which a ten-

ant has to fixtures is a *right to remove* them in certain cases, and until that right is exercised, they are not goods and chattels. The term itself implies this. The plaintiffs, therefore, not becoming, by the sale, the assignees of Hunt's interest in the term, acquired no title to the fixtures. (*Nutt* v. *Butler*, 5 Espin. R. 176; *Lee* v. *Risdon*, 7 Taunt. R. 188; [2 C. & R. 69;] *Colegrave* v. *Dios Santos*, 2 Barn. & Cress. 76; *Longstaff* v. *Meagoe*, 2 Ad. & Ellis, 167; Amos & Ferard, Laws of Fixtures, 243, ed. of 1830; *Niblet* v. *Smith*, 4 Term R. 504.)

II. The title of the plaintiffs has thus far been considered without reference to the claim of the defendant, and supposing him to be in possession without title. But the defendant had a title or interest in the property called fixtures, which was not divested by the sale or otherwise. (1.) By the lease itself, the fixtures and machinery were put in pledge, or were mortgaged to the defendant to secure the payment of certain moneys to be loaned by the defendant to Hunt, and created a lien thereon, which could only be raised or destroyed by the payment of the loan. (2.) The money was to be loaned to Hunt, for the purpose of his expending it in buildings and improvements in and upon the leased premises. (3.) The buildings, machinery and fixtures were to be kept insured by Hunt, and the policies assigned to the defendant, as collateral to the loan and for his benefit. (4.) The defendant was also to renew the lease, if requested, or to convey to Hunt the premises and appurtenances within nine years and six months; but if, at the expiration of the term, the lease was not renewed, nor the premises purchased by Hunt, Hunt was at liberty to remove and dispose of the buildings, fixtures and machinery, provided the same be removed within ten days after the expiration of the lease, and not otherwise. (5.) The loan was made by the defendant, and was not repaid by Hunt. (*Earl of Shrewsbury* v. *Gould*, 2 Barn. & Ald. 487; *Webb* v. *Plummer*, 2 Ib. 746; 1 Leon., cited in note to *Randall* v. *Lynch*, 12 East, 179; [182;] *Pordage* v. *Cole*, 1 Saund. R. 319; *Randall* v. *Lynch*, 12 East, 179; Platt on Covenants, 55, 56.)

Breese *v.* Bange.

III. The assignment of the lease by Hunt to the defendant, as collateral security for the payment of certain notes and other demands, gave the defendant the right to retain the fixtures. This assignment either worked a dissolution of the relation of landlord and tenant, and amounted to a surrender of the lease, or it made the defendant assignee of the lease and term, or it was a mortgage. Either view of the case is fatal to the plaintiffs' action. 1. If, by the assignment, the relation of landlord and tenant was dissolved, then the defendant had a right to retain the fixtures, as it is only in virtue of that relation that the tenant has a right to remove them at all. (See *Shepard* v. *Spaulding*, 4 Metcalf, 416.) 2. If, however, the defendant be regarded as assignee of the lease, then he became vested with all the rights and interests of the lessee thereunder. The fixtures became his, and neither Hunt nor any purchaser from him had any right to remove them. 3. But if the assignment was a mortgage, then the defendant, as mortgagee, had a right to the fixtures, or had a lien thereon which was never paid or satisfied. In other words, it is submitted that where a tenant gives a mortgage of a lease or leasehold premises, such a mortgage embraces the fixtures as a part of the tenant's estate or interest under the lease. 4. If Hunt be regarded as the absolute owner of the premises, then, under a conveyance or mortgage by him of his estate, his grantee or mortgagee clearly would take the buildings and fixtures. (*Robinson* v. *Preswick*, 3 Edw. Ch. R. 246; *Day* v. *Perkins*, 2 Sandf. Ch. R. 259; *Smith's Leading Cases*, 28 Law Lib. 166, 167; *Langstaff* v. *Meagoe*, 2 Ad. & Ellis, 167; *Miller* v. *Plumb*, 6 Cowen, 665; *Watts* v. *Sherman*, 20 Wend. 636; 4 Metcalf, 316; 7 Ib. 40; 16 Vt. 124; 12 N. H. 205; 7 Blackf. 469.) 5. The evidence shows that the fixtures could not be removed without being taken to pieces, tearing up the foundations and removing parts of the building. 6. As between landlord and tenant in the present case, the tenant had no right to remove. (See cases above cited, and Cowen's Review, in *Watts* v. *Sherman*, of other cases, English and American.)

IV. The referee clearly erred on the question of damages. 1. The plaintiffs are not entitled to recover for the loose property, so called, which was sold separately by the sheriff. The evidence is clear and uncontradicted, that they were put in possession of Nelson Mitchell by the agent of the plaintiffs. 2. The defendant was not warehouseman or bailee of any kind, and Mitchell was not his agent to receive goods on storage. Besides, the plaintiffs made Mitchell their bailee, and must look to him for the goods. 3. The defendant never converted these goods. There was no sufficient demand or refusal. 4. As to the fixtures, so called: The action is to recover damages for them as personal property, severed from the land. The plaintiffs have no right to use the fixtures there, but only at most a right to remove them and reduce them into their possession. The witnesses for the plaintiffs are competent to speak on the subject, and state satisfactory grounds for their opinions. One estimates their value at $200; another at $238 50; another at $238 50; and another at $238 50. 5. There is not a particle of evidence in the case to sustain the finding of the referee on the amount of damages, and in order to find as he did, he must have adopted an erroneous rule of law.

*C. Bainbridge Smith*, for the plaintiffs.

I. The machinery, &c., in controversy, having been erected by the tenant for the purposes of trade, are personal property, subject to be sold on an execution against him. (*Van Ness* v. *Packard*, 2 Peters R. 137; *Cook* v. *Champlain Trans. Co.*, 1 Denio, 91; *Poole's Case*, 1 Salk. R. 368; Taylor's Land. and Ten. 186.) 1. Where the right of removing a fixture, as against the owner of the inheritance, is vested, it may equally be taken advantage of by his assignee. (*Doty* v. *Gorham*, 5 Pick. R. 487; *Lemar* v. *Miles*, 4 Wash. 330; *Smith* v. *Benson*, 1 Hill, 176; *Gale* v. *Ward*, 14 Mass. 352.) 2. And trover will lie. (*Smith* v. *Benson*, 1 Hill, 176; *Farrar* v. *Chauffetete*, 5 Denio, 527; *Russell* v. *Rich-*

*ards*, 2 Fairf. 371; *Osgood* v. *Howard*, 6 Greenleaf, 452; *Hilborne* v. *Brown*, 3 Fairf. 162; *Wansburgh* v. *Morton*, 4 A. & E. 884.)

II. As between vendor and purchaser, it has been held, that where machinery, erected by the owner of the fee for manufacturing purposes, on timber imbedded in the ground or fastened to the timbers of a° building by bolts, screws, pins or cleats, if put up with a view to its being removed without injury to the building, is not a fixture passing with the freehold. (*Farrar* v. *Chauffetete*, 5 Denio, 527; *Vanderpool* v. *Van Allen*, 10 Barb. S. C. R. 157; *Dubois* v. *Kelly*, Ib. 496.) 1. "With a view to its being removed." This is adopted and runs through all the cases as the mode of determining whether a fixture belonging to the owner of land will pass upon a sale of the latter, although annexed to it, when it is not mentioned in the conveyance. (*Id.*) And to pass with the realty it must be fixed to the freehold, *perpetui usus causa*. (*Dubois* v. *Kelly*, 10 Barb. S. C. R. 496.) 2. And in other cases, what are fixtures will turn on the question whether the inheritance can be enjoyed without them. In *Lawton* v. *Salmon*, Lord MANSFIELD, in relation to them, said: "They are accessories necessary to the enjoyment of the principal. The owner erected them for the benefit of the inheritance." (*Lawton* v. *Salmon*, 1 H. Bl. 260, n.; *The Olympic Theatre*, 2 Browne, 279, 285; cited in 20 Wend. 643; 2 Kent's Com. 6th ed. note to p. 345; *Heermance* v. *Vernoy*, 6 Johns. R. 5; *Gale* v. *Ward*, 14 Mass. 352; *Duck* v. *Braddyll*, 13 Price, 455; *Herne* v. *Baker*, 2 Smith's L. C. 235; *Walker* v. *Sherman*, 20 Wend. 638; *Cresson* v. *Stout*, 17 J. R. 116; *Hare* v. *Horton*, 5 Ad. & E. 715; *Minshall* v. *Lloyd*, 2 Mee. & W. 459; *Trappes* v. *Harter*, 3 Tyrwh. 603; *Hellawood* v. *Eastwood*, 3 Com. Law and Eq. 562.) 3. Though grass growing is part of the realty, yet where it is owned by one who does not also own the land, it is personal property, and may be mortgaged as such. (*Smith* v. *Jenks*, 1 Denio, 580; S. C. 1 Comst. 90.) 4. The machinery and fixtures in question were erected by the tenant for the

purposes of trade, and with a view to their being removed. (See covenant in the lease from the landlord, the defendant, to the tenant.)

III. There is no dispute as to the machinery in question having been erected by Hunt, the tenant, for the purposes of trade and manufacture. 1. The defendant claims title by an alleged mortgage. An instrument executed on the back of the lease by Hunt, the lessee, in which he transfers as collateral security the "within agreement," *i. e.*, the lease, not the machinery. 2. The maxim, *expressio unius exclusio alterius*, applies. (*Hart* v. *Horton*, 5 Barn. & Ad. 715.) 3. If it were a good and valid mortgage as against Hunt, it would be void as to judgment creditors, it never having been filed, &c. (*Camp* v. *Camp*, 2 Hill, 628; 3 R. S. 3d ed. 196, §§ 9, 10; *Smith* v. *Jenks*, 1 Denio, 176; S. C. 1 Comst. 90.) 4. Personal property cannot, by any covenant or agreement, be changed into realty. (*Allen* v. *Culver*, 2 Denio, 284, 295; *Sturgis* v. *Warren*, 11 Vern. 433; *Horn* v. *Baker*, 2 S. L. C. Am. notes, p. 219; *Smith* v. *Benson*, 1 Hill R. 176.)

IV. The plaintiffs' title to the property in question is derived—1. By a sale from Hunt to them. 2. By a chattel mortgage from Hunt to Bishop. The former having made default in the payment of the money secured by it, the latter took possession of the property, and became absolute owner of it. Bishop and Hunt afterwards sold all their interest in the property to the plaintiffs. (*Brown* v. *Bement*, 8 J. R. 75; *Langdon* v. *Buel*, 9 Id. 80; *Patchin* v. *Pierce*, 12 Wend. R. 596; *Burdock* v. *McVanner*, 2 Denio, 473.) 3. By a sheriff's sale. The judgment of Bishop against Hunt was not merged in the mortgage. The latter was a higher security. (*Butler* v. *Vosburg*, 1 Comst. R. 196.) 4. The mode of selling was proper. (*Bank of Lansingburgh* v. *Crary*, 1 Barb. 542; *Tifft* v. *Barton*, 4 Denio, 171.) It was in that way "calculated to bring the highest price." (2 R. S. 3d ed. 465, § 25.) 5. If the sale was irregular and void, it would not affect this action; for the title to the property in question is acquired from the mortgage of Hunt to Bishop, and the

sale by them to the plaintiffs; and those sales vested the absolute ownership in the latter. If the sale were irregular, the defendant is not in a situation to complain, or take advantage of it. (*Lenendool* v. *Doe*, 14 Johns. 222.) 6. A demand of the property of the defendant was made by the plaintiffs before suit. It was not necessary, for the defendant did not come in possession of it lawfully. (*Bayles* v. *Conkling*, 10 Wend. 389.) The defendant was in possession and using the property in question, and at the sheriff's sale claimed all but the loose tools to be his. The presumption is, that Hunt is still the only person entitled to the possession of the premises, he being the tenant. (See lease from Bange to Hunt; *Garrett* v. *Scouten*, 3 Denio R. 334.) Any use or disposition of a chattel without the consent of the owner, and inconsistent with his right, is a conversion. (*Hutchinson* v. *Bates*, 1 Bailey, 546; *Reed* v. *Comstock*, 1 N. & M. 592.) In trover, a slight agency on the part of the defendant in resisting the claim of the owner, is sufficient to sustain a recovery. (*Farrar* v. *Chauffetete*, 5 Denio, 527.)

V. As to the damages.

The machinery in question actually cost some $12,000, and the lowest valuation placed upon it as such is between $3,000 and $5,000, and the value testified to ranges from those sums up to its original cost. This is independent of the tools, which are variously estimated from $1,500 down. The valuations placed upon the machinery of $200 and odd, are all based upon the value of it when taken apart and sold as old iron; it being, as it is contended, incapable of removal. This forms, also, the subject of great contrariety of opinion. But the whole question resolves into this: A tenant erects certain machinery for the purposes of trade, and in addition to his legal right, it is covenanted, on the part of the landlord, that the tenant may remove it. The landlord afterwards, and during the term, takes illegal possession of it, and when the tenant sues for its value, the landlord sets up that to him the property is worth $5,000; but to the tenant, when taken apart and sold as old iron, it is not worth as many hun-

dred. Is the former or the latter the rule of damage ? The referee reported in favor of the plaintiffs $1,500. If he erred, it was in favor of the defendant, and he cannot take advantage of it.

BY THE COURT. DALY, J.—The agreement executed by Hunt, upon the back of the lease, cannot be regarded as a surrender of the lease and a merger of the term, so as to work a dissolution of the relation of landlord and tenant; for the transfer was not *absolute*, but *conditional*, subject to be defeated, before the expiration of the term, by the performance of the condition. It was an assignment of all Hunt's right, title and interest in the previous agreement or lease, as *collateral security* for the payment of the two notes, or of any demand which Bange might thereafter have against Hunt for goods, wares and merchandise, or otherwise. The payment, before the expiration of the term, of any demand for advances subsequently made, or obligation incurred by Bange, with the payment of the notes, would have fulfilled this condition; and the right to the possession, for the residue of the term, would have been exclusively in Hunt, subject only to the conditions contained in the lease. This subsequent agreement on the part of Hunt was, in my opinion, a mortgage, which superadded, to the relation of landlord and tenant already existing between the parties, the additional relation of mortgagor and mortgagee.

The quality or attribute which distinguishes a mortgage from another and different kind of security is the condition, that if the debt, which it is given to secure, be paid *at a day specified*, the conveyance is to be void, or if not, that it becomes, as a conveyance, absolute at law, though subject in equity to the right of redemption. (2 Bl. Com. 157; 1 Powell on Mortgages, by Coventry, 4, note B., and 109, note D.; Coke Litt. §§ 332, 205, *a.*) This is implied in the term itself, compounded of two French words, *mort*, dead, and *gage*, pledging; dead pledge, contradistinguished from the *vivum vadium* of Littleton, or living pledge; as where a debtor, who hath borrowed money, transfers an estate to his

creditor, to be held by the creditor until he has repaid himself out of the issues and profits of the land ; in which case the estate is never lost or dead to the debtor. (Coke Litt. 205, *a.*) In the *mortuum vadium*, however, which is our modern mortgage, the estate rests at once in the creditor, subject to be defeated only by the discharge of the debt at the day limited for payment. "It seemeth," says Littleton, "that the reason why it is called mortgage is, that it is doubtful whether the feoffer will pay, *at the day limited*, such sum or not ; and if he doth not pay, then the land, which is put in pledge upon condition, for the payment of the money, is taken from him forever, and so dead to him upon condition." (Litt. § 332, lib. 3, chap. 5.) "And it is called *mortgage*, or *mortuum vadium*," says Coke, "both for the reason expressed by Littleton, and to distinguish it from that which is called *vivum vadium.*" (Coke Litt. 205, *a.*) This instrument transfers a leasehold estate, as a security for the payment of money by a day specified, for it states the day when the notes, the payment whereof it is intended to secure, are due and payable, which brings it strictly within the definition of a legal mortgage. And in equity, with very few exceptions, any conveyance, assignment, or instrument, transferring an estate, originally intended by the parties as a security for money, or for any other incumbrance, whether this intention appear from the same instrument or from any other, is a mortgage redeemable upon the performance of the condition or stipulation. (2 Story's Eq. Jur. 1,018, 6th ed.)

This instrument was also intended as a security for future advances or demands which Bange might subsequently have against Hunt, and such advances, both of money and goods, it appears were made. But that would not alter its character, for to the extent of such advances, it would be regarded and treated in equity as an equitable security, in the nature of a mortgage. (*Ex parte Oaks* v. *Watson*, 2 M. D. & De G. 234; *Ex parte Smith* v. *Gye*, Ib. 314; *Ex parte Wills*, 1 Ves. Jr. 163; *Waters* v. *Mynn*, 14 Jur. 341; *Abbot* v. *Stratton*, 3 Jones & Lat. 609.)

Regarding it as a mortgage, it becomes necessary to determine what was conveyed by it to the defendant. I think the transfer of Hunt's right, title and interest in the previous agreement or lease, carried with it his right to the unexpired term, and to the buildings, fixtures and machinery erected upon the premises. An assignment, by way of mortgage, of a household interest, would necessarily include all erections upon the land, unless it was apparent, from the terms of the instrument, or from the nature of the erections, that such was not the intention of the parties. (*Colegrave* v. *Dios Santos*, 2 B. & C. 76; *Ward* v. *Smith*, 11 Price, 19; *Stewart* v. *Loombe*, 4 Moo. 218; *Hare* v. *Horton*, 5 B. & A. 715; *Winslow* v. *Merchants' Insurance Company*, 4 Met. 306; *Trappes* v. *Harter*, 2 Cromp. & Mee. 153.) That it was not the intention to transfer the unexpired term, divested of any right to the possession of the buildings, fixtures and machinery, is manifest from the instrument, when taken in connection with the original agreement or lease, and the erections put upon the land by means of the advances made for that purpose by Bange, in pursuance of that agreement. The land was demised to Hunt for the period of ten years, at an annual rent, Bange agreeing to advance him, within four months from the date of the agreement, $2,500, to be expended in buildings and improvements upon the land, which Hunt agreed to repay. That is, he agreed to pay $2,710 in two instalments, one of $1,675, in sixteen months, and one of $1,035, in twenty months from the date of the agreement; and Hunt bound himself to keep the buildings, fixtures and machinery, which might be erected upon the premises, insured to the extent of $2,700, as collateral security to Bange for the payment of the money advanced by him. And it was further agreed, that if this money should not be punctually paid, or if default should be made in the payment of the yearly rent, or any part of it, for thirty days, that Bange might proceed by ejectment or re-entry, and recover possession of the premises, with a further stipulation that Hunt, at the expiration of the ten years, might remove and dispose of all the build-

ing, fixtures and machinery erected by him upon the premises. Bange advanced the $2,500 within the time limited, and the erections were completed by Hunt in May, 1848. It will be seen, that by the terms of this agreement, Bange was to have an insurable interest in the buildings, fixtures and machinery, by way of security for the payment of the money he had advanced towards their erection. But he made a further advance of $1,551 69, for which Hunt had given two notes, payable in four and six months, and it was to secure the payment of this sum, as well as prospective advances, that this additional agreement or mortgage was entered into. I think it is obvious from these facts, that it was not the intention to mortgage the unexpired term, excluding the buildings, fixtures and machinery, which must have constituted, in fact, the principal security for the large sum of money advanced by Bange, a sum exceeding $4,000 when the last instrument was executed, and which, by subsequent advances, was increased to more than $7,000. That it was intended that Bange should have an interest in the buildings, fixtures and machinery, is evident from the original agreement or lease. As before remarked, they were to be insured and kept insured, for his security, until the money he had advanced should be repaid. If default should be made in the payment of the $2,700, he was entitled to a re-entry or to maintain ejectment, to repossess himself of the premises, and in that action would have recovered back the land, including whatever erections had been put upon it. The reservation in the lease, that Hunt might remove or dispose of the buildings, fixtures and machinery, at the end of the term, is a concession that but for that provision, they would belong to Bange. It is with a proviso that they shall be removed within ten days after the expiration of the term, *but not otherwise.* It was a privilege he found it necessary to secure by the lease, and when he transferred all his interest in the lease to Bange, he transferred that right or privilege also. If the condition had remained unperformed until the expiration of the term, there could be no doubt of Bange's right, either

to remove or to dispose of them. Having acquired all Hunt's interest in the lease, he undoubtedly acquired Hunt's right of disposing of them at the expiration of the lease; and as soon as Hunt, as mortgagee, was in default, the right of Bange to enter, to take and retain possession of them until the mortgage was redeemed, follows as a consequence of the transfer that had been made to him. To show that the defendant, Bange, had an interest in the buildings, fixtures and machinery, under the lease, that would be recognized and protected, let us view this case in another aspect. Suppose, now, that $2,700 is due; that Hunt, or rather, that the plaintiffs, as his assignees and as the assignees of Bishop, should apply to redeem under this mortgage, would not a court of equity require the payment of this $2,700? The lease makes provision for the recovery of the land in the event of its non-payment; but notwithstanding that, the court would recognize the $2,700 as an equitable charge upon the buildings, fixtures and machinery, and would require that it should be paid, before it would direct that the unexpired term, with the improvements upon the land, should be transferred to the plaintiffs.

In respect to fixtures, the rule is more strict between mortgagor and mortgagee, than as between landlord and tenant. The right of a tenant to remove fixtures, which he has erected upon the land for the purpose of trade or manufacture, is strongly favored, but there is no reason for giving it an equally extensive application in the case of a mortgagor. With no show of justice could a landlord, who leases his land at a stipulated rent, thus receiving an equivalent for its use, insist upon his right to erections put up by the tenant, at his own expense, to carry on his trade or business, which the tenant can remove without leaving the land in any worse condition than he found it. But the case of a mortgagor is different. He conveys the land, by way of security, for the repayment of money, and whatever is attached to the land, to be habitually used and enjoyed with it, whether for the purpose of trade and manufacture or not, goes with it, as a part of the

mortgage security. Whatever may be fairly regarded as a part of the freehold, passes. It may often be, as appears to have been the case here, that the erection or improvement constitutes the essential part of the security, and that they have been added to the land by means, in whole or in part, of the very money, the repayment of which the mortgage is intended to secure.

From the description given by the various witnesses of the buildings, fixtures and machinery, it is impossible to come to any other conclusion, but that they fall within the description of property that would pass to a mortgagee. (*Bulkley* v. *Bulkley*, 11 Barb. 63; *Vanderpool* v. *Van Allen*, 10 Ib. 157; *Walker* v. *Sherman*, 20 Wend. 636; *Stewart* v. *Lombe*, 1 B. & B. 506.)

The building and fixtures were put up for and adapted to the machinery, which was to be moved by water power, flowing over the land, the right to the use of which formed a part of the grant in the lease. This fact alone, the erection of a building for machinery to be moved by water power existing upon the land, is sufficient to render the whole structure a part of the freehold, at least, as between mortgagor and mortgagee. It is no stronger than the case of the windmill, in *Stewart* v. *Lombe*, 1 B. & B. 506, which, it was held, would pass to the mortgagee, as a part of his security, though it might be otherwise as between landlord and tenant; and a building put up with machinery adapted to the use of a water power existing upon the land has been recognized as a very just criterion to distinguish what belongs to the freehold as between vendor and vendee. (*Farrar* v. *Chauffetete*, 5 Denio, 527.) In this case, the whole structure was designed for one purpose. The building, fixtures and machinery were adapted for use in the place where they were erected and not elsewhere, for, in the opinion of the great majority of the witnesses, the fixtures and machinery could not be removed without entirely losing their distinctive character. To sever them, would, in their judgment, render them of no value thereafter, except as old iron, or as wood to burn. The

entire structure, building, fixtures and machinery were put up by Hunt, to be used and enjoyed by him, during his term; and when he mortgaged that term to the defendant, the erections which he intended should be enjoyed with it, necessarily passed to the mortgagee.

The referee appears to have attached some importance to the circumstance, that neither the lease nor the instrument endorsed upon it, which I have treated throughout as a mortgage, were filed in a county clerk's office; and the counsel for the plaintiffs has argued, that if the latter instrument be valid as a mortgage against Hunt, it is void as to judgment creditors, not having been filed. The statute providing for the filing of mortgages, (2 R. S. 196; §§ 9, 10, 3d ed.,) relates only to mortgages of personal property, and has no application to this instrument, which is a mortgage of an interest in real estate. It was not necessary even to record it or the original lease; for leases in Ulster county need not be recorded—the recording of them, in that county, being specially excepted from the operation of the general provision in the recording act. (2 R. S. 47, § 49, 3d ed.) But both instruments appear to have been recorded a few days before the sheriff's sale, which would have been sufficient, had recording been necessary to give Bange a title, as against a purchaser at the sheriff's sale. (2 R. S. 40, § 1, 3d ed.)

The subsequent mortgage, given by Hunt to Bishop, could not affect the prior mortgage existing in favor of Bange; nor could Bange's interest be affected in any way by the levy and sale, under the judgments subsequently recovered by the plaintiffs. When Bishop took possession under his mortgage, he held subject to the prior mortgage of Bange; and when the plaintiffs purchased, at the sheriff's sale, "Hunt's interest in the lease, fixtures and machinery," they acquired nothing more, as against Bange, than Hunt's right to redeem. It is even doubtful whether, under such a sale, they could acquire that. It was a sale of a leasehold term for more than five years, which could only be sold in the same manner as real estate. (Laws of 1837, p. 540; 2 R. S. 722, § 5;

454, § 6 ; 466, §§ 36, 37, 3d ed.)   It appears, by the sheriff's testimony, that it was sold like personal property, upon a notice of six days, which was irregular and void.   Even if the fixtures and machinery were not part of the freehold, and were capable of being sold as personal property, the sale was not the less irregular and void, the sheriff having sold the whole lease, fixtures and machinery in one lot, without discrimination.   (*Cresson* v. *Stout*, 17 Johns. 116.)   As a general rule, an irregularity in the judgment or in the issuing of the execution, will not affect the title of a *bona fide* purchaser at a sheriff's sale, without notice.   (*Jackson* v. *Roosevelt*, 13 Johns. 98 ; *Jackson* v. *Davis*, 18 Ib. 7 ; *Doe* v. *Thorn*, 1 M. & S. 425.)   But a neglect on the part of the sheriff to comply with the requirements of the statute, such as omitting to give the requisite notice of the sale, or to have the property within view of those attending the sale, or to offer it in lots and parcels as required by the statute, or selling real and personal estate together in one lot, renders the sale irregular and void.   (*Sheldon* v. *Soper*, 14 Johns. 352 ; *Cresson* v. *Stout*, 17 Ib. 116 ; *Waring* v. *Loomis*, 4 Barb. 484.)   I very much doubt whether the plaintiffs, as purchasers, at an irregular sale, made under their own judgment, could acquire any title.   It would be a question, however, between Hunt and them, (*Stevens* v. *Baird*, 9 Cowen, 274,) had they not, in addition, become the assignees of all his interest by a subsequent assignment.   It was, perhaps, unnecessary to touch upon this point here, though discussed upon the argument, it being wholly immaterial in the view I have taken of this case.   The plaintiffs, by the assignments made to them by Hunt & Bishop, have acquired whatever interest remained in Hunt, which was simply a right to redeem, and which is all the interest they now have in the fixtures and machinery.

They have brought their action, claiming to recover the building, fixtures, machinery, tools and other articles, as owners ; that is, all the articles described in the schedule annexed to their complaint.   The referee has found that

Hunt went into possession of the premises, and placed and built thereon various *tools* and machinery for the manufacture of iron and anchors, and that the property in the *tools and machinery* became vested in the plaintiffs. He fixes their value at $1,500, and reports, as his conclusion, that judgment for the plaintiffs should be entered for that sum. In addition to the fixtures and machinery, the sheriff sold a lot of loose articles, consisting of tools, iron ore, timber, old castings, charcoal, rope, &c., which brought something over $300. In looking over the schedule annexed to the complaint, I find but three articles that the referee would be justified in assuming as embraced in this lot. The sheriff's inventory specifies twenty-five pairs of tongs, that brought $50. In the schedule there is an item, "fifteen pairs of large and small tongs." In the inventory, "fifteen sledges," that brought $35; and in the schedule, " sixteen large and small sledge hammers ;" and again, in the inventory, " two shovels," which, with other articles, brought $5; and in the schedule, " eight long-handled shovels, iron and wood." In the schedule there are many other loose articles that would not come under the denomination of fixtures or machinery ; but nothing in the evidence to show that they were ever in the defendant's possession. Some of them are embraced in Bishop's mortgage; but it does not appear that they were on the premises at the time of the sale ; and the presumption from the sheriff's inventory would be, that they were not. The schedule attached to the complaint, which enumerates what the plaintiffs claim to recover, is occupied principally with a description of the fixtures and machinery, embracing even the building as " one office, one barn, one building called the forge and anchor shop, about one hundred and fifty feet in length, by forty-five feet wide, or thereabouts." The only tools or loose articles, then, essential to inquire about, as embraced in the schedule, are those already mentioned—twenty-five pairs of tongs, sixteen large and small sledges, and eight long-handled shovels of iron and wood. A portion of these articles, as has been stated, were included in the lot

sold by the sheriff as loose articles. The title to them passed to the plaintiffs, as assignees of Hunt and Bishop, and if they had established by the evidence that they were in the possession of Bange, and proved a demand, they could maintain this action to recover their value. It appears, by the testimony, that all the loose articles, which were sold by the sheriff separately, were purchased by Bishop for the plaintiffs, and placed by him in the charge of one Nelson Mitchell, with instructions from the sheriff, at the request of Bishop, that Mitchell should take charge of them for the sheriff, who gathered them up and put them in the office building, nailed up the window and put a lock upon the door, where they remained until April, 1849, after the plaintiffs made the demand. Mitchell says that Bange knew nothing about it, and had no connection with the matter. He became thereafter the agent for Bange in the manufacture of iron, and says that the defendant's workmen did not use the tools; that they were rough and unhandy and unfit for use, and that after his return from California, he looked in the office and saw a portion of the tools and the iron and bells, in the same office where he left them. Bange, who was present at the sheriff's sale, told the sheriff that he had no claim to these loose articles; that his claim was confined to the machinery and fixtures fastened to the freehold, and embraced in what the sheriff sold as Hunt's interest in the lease, fixtures and machinery, and there is nothing in the evidence to show that he ever exercised any dominion over them, or made any claim to them thereafter. If the plaintiffs supposed them to remain upon the premises after Bange went into possession, it was no affair of his. He is not liable to an action for the value, unless it appear that they were specially demanded and he refused to allow the plaintiffs to take them. The demand was a general one, of every thing included in the schedule annexed to the complaint, which the witness held in his hand at the time. It was made in this city. Bange asked the person who made it, if it was the property at Naponock, and was told it was; whereupon he declined to give any answer

until he should consider the matter; and he asked for a copy of the schedule or inventory, which the witness said should be furnished. Whether it was furnished or not, does not appear. This was not a demand and refusal of the articles that Mitchell had taken charge of, and would furnish no ground for maintaining an action against Bange, to recover their value. The report of the referee must be set aside.

WOODRUFF, J., concurred.

INGRAHAM, FIRST J., not being present at the argument, took no part in the decision.

Judgment set aside and case referred back, with liberty to introduce further testimony; costs to abide the event.