JOHN G. SPEAIGHTS AND OTHERS, EXECUTORS, &C., OF JOHN G. DUDLEY, DECEASED, RESPONDENT, *v.* J. DEAN HAWLEY, APPELLANT.

*Vendor—Chattel Mortgage—Possession of Mortgagor after default—Sale to third person—Liability to Mortgagee.*

Where the mortgagor of chattels, in possession thereof after default in the payment of the mortgage debt, fraudulently delivered them to a third person for sale, representing that they were his property, and the third person, as agent for the mortgagor, sells the chattels, such third person is liable to the mortgagee for the value thereof, notwithstanding he acted in good faith, believing that the chattels were the property of the mortgagor, and paid the proceeds of the sale which he made, to the mortgagor, without reward for his services. The agent in a fraudulent disposition of the property of another, not being money nor negotiable paper, is liable therefor to the owner, although he act in good faith, without interest or reward, and in the belief that his principal is the owner.

Mere possession of personal property is not such an indicium of ownership or warrant to dispose of, as will protect a bonâ fide purchaser for value.

He who assumes to deal or intermeddle with chattels not his own, must see to it that he has a warrant therefor from the owner, or from one who has authority from the owner to confer such warrant.

The mere continuance of the mortgagor in the possession after default in the payment of the mortgage debt, is not enough.

APPEAL from an order of the Supreme Court in General Term in the Fifth District, reversing a judgment for the Defendant, entered on the report of a referee, and awarding a new trial.

The action was brought to recover damages alleged to have been sustained by the Plaintiff by reason of a sale by the Defendant of a set of diamond earrings and a diamond pin, which had been mortgaged to the Plaintiff by Charles Ashby and Eugenia his wife, on the 25th of August, 1859, to secure the payment of six hundred dollars, due to him from the said Charles Ashby.

The answer admits the sale by the Defendant, and avers that the jewelry was sold by him as the agent for Mrs. Eugenia Ashby, and was her property (to wit, her personal jewels and orna-

ments), placed in Defendant's hands for sale for the said Eugenia by Charles Ashby her husband, and that he made such sale in good faith for the said Eugenia, without any notice that the Plaintiff had any mortgage or claim upon the property, and that the Defendant never had or claimed any property or interest therein, or in the proceeds thereof.

The facts found by the Referee are, that Charles Ashby was indebted to the Plaintiff in the sum of $600, and on the 25th of August he and his wife mortgaged the jewelry in question (it being the property of the wife), to secure to the Plaintiff payment of the debt in one year from the date. That the jewelry remained in the possession of the mortgagor, but the mortgage was duly filed in the office of the County Clerk, and a copy was also filed before the expiration of the year, with due endorsement of the amount due.

That in March, 1861 (about seven months after the mortgage had become payable), the Plaintiff commenced an action to foreclose the right of redemption, which action was tried before a Referee, who reported in May, 1862, in favor of the Plaintiff, but judgment therefor has not been entered. Pending that action, and in March prior to the report, Ashby took the jewelry to the Defendant, a dealer in watches and jewelry in Syracuse, represented that it belonged to his wife, offered to sell it to the Defendant, and finally agreed that the Defendant should send it to New York and sell it. The Defendant sent the jewelry to New York and effected a sale there for $200, which was the best price he could obtain. He received the proceeds of sale, and paid them to Ashby without charge for his services. He acted simply as the agent of Ashby or Ashby and wife, without notice of the mortgage or title of the Plaintiff, in good faith.

The value of the jewelry, the referee finds, was three hundred dollars.

The conclusions of the Referee, stated as conclusions of law, are that the title of the jewelry was in the Plaintiff; that he does not doubt the good faith of the mortgage, although the property was left in the possession of the mortgagors—but that, as the Defend-

ant is neither creditor nor a purchaser, the question of fraud in the mortgage does not arise; that the mortgagors were guilty of converting the diamonds, and what the Defendant did, he did as their agent, and at their request; but that, by the continuance of the property in the possession of the mortgagors, Ashby or his wife was suffered to continue the apparent owner, and enabled to commit the wrong complained of; that the Defendant was an innocent party who relied upon such apparent ownership; he acted as agent merely, in the general line of his business, and made no profit by the transaction. As he was not a creditor nor a purchaser, so he is in no manner affected by the filing of the mortgage; that the lack of notice repels any presumption of fraud.

That, upon the facts stated, it is not just that the Plaintiff should recover, and such is not the law.

From the judgment for the Defendant, entered upon this report, the Plaintiff appealed to the General Term of the Supreme Court. The judgment being there reversed, and a new trial ordered, the Defendant stipulated, and appealed to this Court.

*Geo. F. Comstock* for Appellant.

*R. Woodworth* for the Respondent.

WOODRUFF, J.—The facts in this case show title in the Plaintiff to the property in question, and a disposition thereof by the Defendant, avowedly and solely as agent for Eugenia Ashby, the owner and one of the mortgagors.

The Defendant's answer avers that he acted as such agent without any interest or claim of interest in the same or its proceeds. The referee finds as a fact that he acted simply as the agent of Charles Ashby or of Charles Ashby and his said wife.

The title of the Plaintiff was valid both upon the facts found and upon the legal conclusions stated by the referee. It follows that the disposition of the property by Ashby and wife was a tortious conversion thereof, and so the referee finds.

No question of fraud in the mortgage to the Plaintiff or otherwise, nor any failure to place his mortgage on file pursuant to the statute, was decided by the referee or by the Supreme Court, nor

claimed by the counsel for the Appellant, to arise in the case, because as against the mortgagors and their mere agent the bonâ fides of the mortgage and the filing thereof were regarded as wholly immaterial, and as against them, the mortgage was held valid, even though made to defraud creditors, and whether filed or not. It is, however, satisfactory to say, that both good faith and due filing and renewal of the mortgage are facts, in the case duly proved and found.

The case, therefore, raises the single question whether the possession of the mortgagors is such evidence of ownership or of authority to make sale of the property, that the Defendant, acting in good faith as their agent in the belief that they were owners, is protected thereby against the claim of the Plaintiff to recover for a sale and disposition thereof. Some stress was laid upon the fact that this transaction was more than a year after the mortgage debt became payable, and the continued possession of the mortgagors during that time is claimed to be laches on the part of the Plaintiff, warranting the Defendant in trusting to their apparent ownership, and executing their direction to sell the property.

The reasoning sought to be applied to this, seems to me to overlook the fact found by the Referee, that for more than a year of the period the Plaintiff had been in the actual prosecution of an action to enforce his rights against the mortgagors, and the further circumstance that the Defendant is in nowise shown to have been affected by or to have had any knowledge whether the mortgagors had been in the possession of the property one year or one day ; he was not misled into any trusting to a long-continued possession, for it does not appear that he ever saw or heard of the property until the day on which it was brought to him for sale.

I do not, however, attach importance to this, for I am not aware of any principle or any authority which makes such mere possession, in the absence of fraud, amount to a justification of the agent in a fraudulent disposition of the property. It is placed by the Appellant upon some general idea that, because the mortgagors had possession and the Defendant honestly believed they were owners, and in that belief, innocent of any wrongful intent,

2

sold the property and paid over the proceeds, it is not just that he should be held responsible. In other words, it is as to the Defendant a hard case.

Now all this would be very well, if it were true that mere possession of personal property was such evidence of ownership or of authority to dispose thereof, that all persons were at liberty to assume such ownership or authority, and act in reliance thereon. Unfortunately for the Appellant, this is not so. Indeed, the cases in which possession imports such authority are very few, and the mere fact of possession, unaccompanied by other circumstances giving it a specific character indicative of authority, never does.

Indeed, any consideration which is urged for the protection of the Defendant would have appealed as strongly in his behalf, if it had appeared that Ashby had stolen the property from the Plaintiff. Ashby's possession would have borne the same aspect of apparent ownership, and the Defendant's sincere good faith and innocence of wrong would have been equally of consideration. True, in such case the possession of Ashby would have been against the will of the Plaintiff; but even then, why should it not be said that the Plaintiff should have taken care that his property be not stolen, and not suffer the innocent Defendant to become a sufferer? But take a stronger case: Suppose the property had been loaned by the Plaintiff to Ashby—it would not in that case be claimed, any more than if stolen by the latter, that Ashby's possession would protect the Defendant, and yet the hardship of holding him responsible would be, in all respects, the same as in this case. I concede that it is hard, in one sense, that the Defendant should be compelled to indemnify the Plaintiff; it is so, because it is not easy always to be perfectly safe in one's dealings.

But chattels are not negotiable; possession is not, as in the case of mercantile paper and money, assurance of title or of authority to dispose of. The servant entrusted with the possession of his master's property does not thereby gain authority to sell it, or to authorize another to sell it; the borrower of a chattel or the ordinary bailor does not by his possession gain any such power;

and, in short, the rule that no one can be deprived of his title without his own consent, has no such exception as is sought to be created in this case ; and the converse rule, that he who assumes property which is not his own must see to it that he has a warrant therefor from some one who is authorized to give it, has no such qualification (Anderson v. Nicholas, 5 Bosw. 121, and cases cited). If he buys from or consents to act by direction of another, he must see to it that in the responsibility of such other he can find indemnity if his confidence is misplaced.

All there is, therefore, of hardship to the Defendant is, that he has undertaken to execute a commission for Ashby, or Ashby and wife; and if, in consequence of acting upon fraud or misrepresentation, he is subject to liability to the Plaintiff, he will have to look to them for indemnity. Perhaps the finding of the Referee indicates that Ashby is insolvent—if so, that makes the hardship ; but even that is not a peculiar case, it is most common in the affairs of business, and having, as the referee finds, heard that Ashby was insolvent when he undertook the commission, he might have known that his recourse to him for indemnity might fail.

The doctrine of the cases cited in the prevailing opinion in the Supreme Court does not appear to be contradicted by the counsel for the Appellant ; and yet they seem to me decisive, in this case, of the principle that the agent, in a tortious conversion of another's property, is liable where his principal is guilty of the tort, and even though the agent act innocently, in good faith, relying on the possession and apparent authority (if possession be deemed such) of his principal. Perkins v. Smith (1 Wils. 328), an innocent clerk sold goods for the use of his master; Stephens v. Elwall (4 Maule & S. 259), an innocent clerk received goods from his master's agent, and sent them to his master abroad. In this case the observation of Lord Ellenborough covers this whole case. The only question is, whether this is a conversion in the clerk which undoubtedly was so in the master. The clerk acted under an unavoidable ignorance, and for his master's benefit, when he sent the goods to his master ; but, nevertheless, his acts

may amount to a conversion, for a person is guilty of a conversion who intermeddles with any property and disposes of it, and it is no answer that he acted under the authority of another, who had himself no authority to dispose of it.

McCombie *v.* Davies (6 East, 537); Baldwin *v.* Cole (6 Mod. 212); Thorp *v.* Burling (11 John. 285); Farrar *v.* Chauffetete (5 Denio, 527); Pearson *v.* Graham (4 Ad. & Ell. 899); Everett *v.* Coffin (6 Wend. 603); Williams *v.* Merle (11 Wend. 80), and these cases recognize and affirm the more general rule above stated, that he who intermeddles with personal property not his own must see to it that he is protected by the authority of one who is himself, by ownership or otherwise, clothed with the authority he attempts to confer. Recurring again to the able and ingenious argument in support of the appeal, and to the point that the Plaintiff was guilty of laches, and that, by suffering the mortgagors to be in possession, he enabled them to deceive the Defendant and produce the result—this assumes that it is negligence in the owner of personal property to permit it to be in the possession of another.

I am not aware of any warrant for such assumption, so long as it is true that a mortgage given in good faith, and for sufficient consideration, is valid, notwithstanding possession may be in the mortgagor, so long as such possession no more involves culpable negligence or laches in the mortgagee than possession of a servant, hiree, or other bailee, imports negligence in the owner. In truth, so long as mere possession does not import authority to sell, the negligence, if any, is on the part of him who relies upon it, and not on the owner who permits it; and the suggestion gains no strength from the observation, that if the Plaintiff had not suffered the mortgagors to be in possession, it would not have been in their power to deceive the Defendant; and where one of two innocent persons must suffer by the wrongs of another, the one who enables such other to commit the wrong must bear the consequences.

How did the mere possession of the mortgagors enable them to commit the wrong? Only by giving them physical power

to deliver the property. The maxim is not true in the sense in which it is sought to be here applied. If it were, then, as in the other cases above referred to, whenever an owner suffers his property to go out of his manual keeping or presence, he is liable to lose it by the same means employed here, and is exposed to the maxim here invoked for the Defendant's protection. It is only where the owner has parted with the legal title upon some secret trust or condition, or has done something calculated to mislead, upon which a third person has a right to rely, and on which he does rely, as evidence of authority, that such maxim could have any application, and the attempt to apply it here begs the whole question (see Cowen, J., in Ash *v.* Putnam, 1 Hill, 302). Mere possession of another's property is not such evidence of ownership or authority to sell, that third persons have a right, as against the true owner, to rely thereon. They may act in faith thereof if they please, but they must rely upon the party with whom they deal, and look to him for indemnity if the title fails, or they be deceived or defrauded into a condition of responsibility. This is the Defendant's situation; he has trusted the representations of Ashby; he has been deceived thereby, and he must look to him for indemnity.

The order of the General Term of the Supreme Court granting a new trial should be affirmed, and in pursuance of the Defendant's stipulation, judgment absolute for the Plaintiff must be rendered.

All concur.

Order of General Term affirmed, and judgment absolute for the Plaintiff, with costs.

JOEL TIFFANY,
State Reporter