(74 App. Div. 64.)

### LEDWITH v. MERRITT.

(Supreme Court, Appellate Division, Second Department.　June 19, 1902.)

REAL ESTATE AGENT—COLLECTION OF RENTS—AUTHORITY—JOINT TORT FEASORS.
　　A real estate agent collected rents from certain property under authority from the daughter of the owner, who was authorized by the owner to confer such authority, and paid the rents over to the daughter, who converted them to her own use. Held, that the agent was not liable for the rents to the estate of the owner on the ground that he was a joint tort feasor with the daughter in collecting them.

Appeal from trial term, Kings county.

Action by Mary Ledwith, as administratrix of James Ledwith, deceased, against Hiram Merritt. From a judgment for defendant, and from an order denying a motion for a new trial, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Thomas F. Magner, for appellant.

Wilfred N. O'Neil (Charles M. Cannon, on the brief), for respondent.

WOODWARD, J. This action is brought by Mary Ledwith, as administratrix of James Ledwith, deceased, to recover from the defendant the sum of $5,309.37, as damages for the alleged conversion by the defendant, in conjunction with one Annie Claffy, of certain rents of premises on East Twelfth street, Manhattan, belonging to the plaintiff's intestate, who was also the father of said Annie Claffy. The conversion in question is alleged to have taken place during the lifetime of the intestate, and between September, 1892, and June, 1894. The answer contained a general denial, and, as a separate defense, alleged that the defendant, as agent for the said daughter of the defendant, collected and paid over to her the rents in question in good faith, believing her to be the owner of said property, and without any knowledge of any claim of title thereto by James Ledwith. So unusual is this action, that a detailed statement of the situation presented seems necessary. The following facts appeared upon the trial: The premises in question consisted of a store on the ground floor and apartments on the other floors. James Ledwith, the intestate, became owner of them in 1853, and the title remained in him until his death, in June, 1894. For many years previous to 1886 the intestate collected the rents in person, but during that year his only son, James Ledwith, Jr., began, and until he died continued, to collect the said rents; the father having become old and feeble. During this period, and until his death, the intestate resided on his farm, at Spring Valley, Rockland county. His family consisted of his son, James, and two daughters,—Julia, who died in July, 1892, and Annie. His wife died many years before. The son died some time before the death of Julia, so that, before the beginning of the alleged conversion, Annie was the only child. She continued to live with and care for her father; attending to the household and to all his business affairs, including the collection of the rents of the premises in question. The father was so feeble as to require almost constant care; and shortly after Julia's death Annie went to the office of the defendant, Hiram Merritt, a real estate agent in Manhattan, and, representing herself to be the owner of these premises, engaged him to collect the rents thereof, and to deposit the proceeds to her account in the Chemical National Bank; at the same time giving him a statement containing the description of the property, the name of the tenants, and the amount of the rent paid by them. Merritt then sent his clerk to the house with Annie, who introduced him to the janitor, Mrs.

Keegan, as the representative of Mr. Merritt, the real estate agent who would thereafter collect the rents; and Mrs. Keegan, who had been janitor there for 25 years, took the clerk through the house, and introduced him to all of the tenants, most of whom had been there many years. Thereafter, and until 1896, Merritt collected the rents, and deposited the proceeds in the Chemical National Bank in Annie's account; believing her to be the owner of the property, and having no intimation to the contrary. In 1896, upon application made by present counsel for the appellant, Mr. Merritt was made receiver of the premises by Mr. Justice Dickey, and thereafter continued to collect the rents as such receiver until discharged by order of the court; but the present action concerns only the rents collected by him prior to the death of the intestate, in June, 1894. Application for letters of administration of the estate of James Ledwith was not made until July, 1896, when the plaintiff herein, who is the widow of the deceased son of the intestate, and mother of the only grandchild, stated in her petition that the intestate left no personal property, except certain claims arising out of the collection of the rents in question. She was duly appointed administratrix, and about the same time she instituted an action against Annie to recover the rents which in our present action are alleged to have been converted by Merritt. Annie died, and judgment in the action was obtained against her administrator, but whether it has been collected does not appear. Some three years elapsed before the institution of the present action. The plaintiff earnestly endeavored to show that the intestate was insane, and therefore not in a position to authorize his daughter to act as she did, but the evidence upon this subject was by no means conclusive; and that question was very properly left to the jury, as was the question whether, in view of all the circumstances, the daughter, the only child, whose almost constant attendance upon her father was required, "was authorized and permitted by the owner to do acts in and about this property which would lead a man of ordinary intelligence and of ordinary care, transacting business in its usual course, to rely upon what she said." The jury rendered a verdict for the defendant, and from the judgment entered thereon the plaintiff appeals.

The principal ground urged for reversal is that the defendant was a joint tort feasor with the daughter Annie in the collection of the rents, and is therefore liable as such. Counsel cites but one authority to support this claim, and that has no bearing, except in cases where it is first shown that a trespass has been committed. He cites several cases to show that the question of the intent of the defendant is not material; but, as the court very properly denied a request of defendant's counsel to charge that good faith on the part of the defendant would prevent recourse to him, that point loses its importance. Counsel's third point is without weight. It is undoubtedly generally true that no one can lawfully authorize or direct the commission of a wrong; and the fact that an agent has acted in good faith is not a defense, for he who intermeddles with chattels not his own should be careful that he has warrant therefor from the owner, or from one who has authority from the owner to confer such warrant. But in the case at bar the jury have found, in substance, that the defendant

had warrant from the daughter Annie to collect the rents, and that she had authority from the owner to confer that warrant. Moreover, to the general rule just referred to there is an exception in the case of money and negotiable instruments, as is noted in the case of Spraights v. Hawley, 39 N. Y. 441, 100 Am. Dec. 452. See, also, Truesdell v. Bourke, 145 N. Y. 612, 618, 40 N. E. 83. And an agent who has received money paid by mistake cannot be compelled to repay it, where he has paid it over to his principal without notice. Buller v. Harrison, 1 Cowp. 565; National Park Bank of New York v. Seaboard Bank, 114 N. Y. 28, 20 N. E. 632, 11 Am. St. Rep. 612; Bank v. Westcott, 118 N. Y. 468, 23 N. E. 900, 16 Am. St. Rep. 771. A case quite apposite to the present discussion is Duffy v. Buchannan, 1 Paige, 452. The British consul at New York, with power of attorney from certain heirs residing abroad, received and transmitted to them the proceeds of the personal estate of an intestate, without notice of the existence of other heirs, who subsequently sought to recover from him. The chancellor says (page 453):

"The consul having received the proceeds of the personal estate as the agent of the brother and sister of the full blood, and paid it over to his principals without notice of the claim of the other parties, he is not liable to them for that amount."

The case was properly submitted to the jury, and no reason appears to justify an interference with the verdict. The judgment and order appealed from should be affirmed, with costs. All concur.