LENA SOMA, Appellant, *v.* GEORGE HANDRULIS, SARAH ALKOFF and FEDERAL RESERVE BANK OF NEW YORK, Respondents.

Second Department, November 5, 1937.

*Otho S. Bowling*, for the appellant.

*Irvin E. Klein*, for the respondents George Handrulis and Sarah Alkoff.

*Walter S. Logan* [*Robert H. Brome* with him on the brief], for the respondent Federal Reserve Bank of New York.

DAVIS, J.   The plaintiff, an illiterate woman who had resided in Yonkers for more than forty years, was there employed as a weaver in a carpet factory.   She had some real property and maintained a deposit in the Yonkers Peoples Savings Bank.   Prior to July 31, 1931, there had been negotiations for the sale of one parcel of her real property to Martha Thomas.   On that date the sale was consummated in the presence of a representative from a lawyer's office, and she received from the purchaser a check, dated August first, drawn on the Westchester Trust Company, for $9,947.26, in payment.   Whilst the plaintiff could with labored effort write her name, the check, with her consent, was indorsed by her legal representative as follows: " For deposit Lena Soma." This action, commenced April 16, 1935, is to recover damages for the conversion of this check.

On the trial, commenced April 12, 1937, the plaintiff was the only witness on her own behalf.   From her testimony on direct examination it appeared that two weeks or more prior to July 31, 1931, she had made the acquaintance of defendant George Handrulis, who resided in Brooklyn and who came to see her about borrowing money, representing that he had great need of it in relation to property he owned in Brooklyn.   Without stating positively that she would make a loan, she told him, " Well, I didn't sell the house yet, I have got no money, I can't give you money yet."   He then inquired when she would sell the house, and she said the first of August.   Handrulis made other calls, and when the sale was made and she had the check, he was waiting for her at her home.   That,

on his invitation, she went with him to Brooklyn and was there entertained, returning to Yonkers the same night. On this journey he repeated his desire for a loan and described the property that he owned. Finally, according to the plaintiff, Handrulis said, "Now, Mrs. Soma, you better give me that check because either you lose it or somebody steal it on you." So she gave it to him and he said he was going to put it in a safe and keep it until the next morning. Later that evening he took her to her home in Yonkers.

Early the next morning Handrulis appeared again at her house and invited her to go to Brooklyn again. They stopped at different places and finally arrived at an apartment house owned by Handrulis. It was then two o'clock on Saturday afternoon and too late to get the check cashed. She remained at this apartment house as the guest of Mrs. Barran, the superintendent. She testified further that Handrulis called at the house Sunday and Monday and stated that the check was in the safe. On Tuesday forenoon, when he came again, she asked him for the check, and he said that he had cashed it, but he gave her a note which she said she did not want, but concluded to take it or "I wouldn't have nothing to show." This note was dated August first, payable six months after date to her order for the exact amount of the check.

On her cross-examination there was a very material difference in the state of facts disclosed. She said she had met Handrulis about two weeks "before he lend the money off me;" and that he had asked for a loan of $3,000. On the Saturday when Handrulis came back to Yonkers, her testimony in relation thereto is as follows: "Q. Do you know what brought him to Yonkers? A. He was going to bring me check or the money."

She went to Miss Thomas [the purchaser] and learned that the check had been paid, but she did not see her lawyer until later in the month. She asked her lawyer, Mr. Terrell, to go to Brooklyn to see Mr. Handrulis and he went with her, but did not see him at that time. "Q. You told Mr. Terrell that you wanted him to get a bond and mortgage for you for the money, didn't you? A. I guess maybe that is."

Later in the same month Handrulis came to see her again to borrow more money, and on August twenty-sixth she lent him $300, taking his demand note therefor. Still later, on December sixteenth, she lent him an additional $500, taking his note for three months for that amount. In spite of her explanation that she lent him this money because he told her she would get nothing on what he owed her, these acts seem inconsistent with her claim that Handrulis had stolen the check.

In the late summer of 1935 a friend of plaintiff had made some charge against Handrulis in the City Court of Yonkers. This friend was represented by an attorney named Greene. Plaintiff was present and engaged Greene as her attorney, evidently to make a similar charge. He had a consultation with plaintiff and took a statement of her claim, dictated in her presence, which, after transcription, was signed by her. Therein it was stated: " Mr. Handrulis came to me and told me that he had a good proposition whereby I could make some money. I told him that I would let him have three thousand ($3,000) dollars to invest for me. I had a check for nine thousand nine hundred ninety-seven ($9,997.00) dollars, which I told him to deposit and open an account for me and that I would give him three thousand ($3,000) dollars.   *   *   *   I gave this check to Mr. Handrulis because he said he wanted to go to the lawyer so that we could settle everything. I went to Brooklyn with him and then he went away." Mr. Greene appeared for plaintiff in City Court and made some statement to the city judge, which plaintiff claims she did not hear, except that it involved $10,000; but as a result of the proceeding Handrulis began paying her $50 a month. In a bill of particulars in this or some other action, verified by her, she stated that Handrulis had obtained loans from her and other women by means of false representations and converted the sums so obtained to his own use.

There were concessions for the record that this check was deposited by defendant Sarah Alkoff on August 1, 1931, in the Globe Bank and Trust Company of Brooklyn, which had been liquidated before this action was commenced. The check was delivered by the Globe Bank to defendant Federal Reserve Bank on the afternoon of Saturday, August 1, 1931, at about four-ten P. M. It was indorsed " Pay to the order of Any Bank Banker or Trust Co. Aug. 1 1931," and also " Pay Federal Reserve Bank of New York or order Aug 1 1931   Prior Endorsements Guaranteed   Globe Bank and Trust Company Brooklyn N. Y."

On August fourth the Federal Reserve Bank received payment from the Westchester Trust Company for the amount of the check and paid the sum so received to the Globe Bank. No demand was made on defendant bank prior to the commencement of the action.

The motion of defendant bank at this time to dismiss the complaint was granted, and we will now consider the liability of the bank.

Admittedly, the indorsement was restrictive and the negotiability of the check was limited. (Neg. Inst. Law, §§ 66, 67, 350-c.)

There are various methods of making restrictive indorsements, such as " for deposit in " a named bank, or " for deposit in " a named bank " for collection," and the purpose is that no person may claim to be a holder in due course, and the maker as well as the payee is thereby protected. (*Gulbranson-Dickinson Co.* v. *Hopkins*, 170 Wis. 326; 175 N. W. 93.)

Where the indorsement is " for deposit in " a named bank, no disposition of the funds may be made other than a deposit by the named bank to the account of the payee, but if the indorsement is simply " for deposit," then any bank receiving it through the payee or his agent may deposit it contingently or hold the funds subject to the order of the payee and for no one else. Of course, this involves the collection of the check from the payee bank, with the depositary bank acting as collecting agent. In such case the ordinary relation of debtor and creditor does not arise and the bank does not become the owner of the check.

Doubtless when the Globe Bank received this check from Sarah Alkoff it was bound to deposit the amount of the check when collected to the account of the plaintiff, or hold the funds subject to her further order. It did not discharge this duty, but deposited the check to the credit of Sarah Alkoff.

Defendant Federal Reserve Bank took the check with indorsements guaranteed and could gain no notice therefrom as to whom the credit for the deposit had been given. As far as it knew, Sarah Alkoff might merely have been the agent of the plaintiff, or indorsed it for identification. The indorsement by the payee and another indicated that the indorsee bank was an agent with apparent authority for collection, and not the owner of the item. (Neg. Inst. Law, § 350-c.) The duty of a bank as a collecting agency is merely to exercise ordinary care in the collection of an item and, when such duty is performed, the agent bank is not responsible if for any cause payment is not received in money, or an unconditional credit given on the books of another bank which credits such agent bank has requested or accepted. The initial or subsequent agent collecting bank is liable for its own lack of exercise of ordinary care, but not liable for the neglect, misconduct, mistakes or defaults of any other agent bank or of the drawee or payor bank. (Neg. Inst. Law, § 350-d.)

By statute (Federal Reserve Act)█ and by regulations adopted by the Federal Reserve Board, there was established through the different Federal Reserve banks what is in effect a clearing house for affording " both to the public and to the various banks of the

country a direct, expeditious, and economical system of check collection and settlement of balances." By Regulation J of the Federal Reserve Board it was provided among other things: " A Federal reserve bank will act only as agent of the bank from which it receives such checks and will assume no liability except for its own negligence and its guaranty of prior indorsements." The duty of defendant bank was merely to collect the funds from the drawer bank and make payment to the initial bank of collection. In making collection it acted as agent and not as owner, and its duty was discharged when it had in good faith settled with its principal. (*Carson* v. *Federal Reserve Bank,* 254 N. Y. 218. See, also, *Heinrich* v. *First Nat. Bank,* 219 id. 1; *Equitable Trust Co.* v. *Rochling,* 275 U. S. 248.)

This defendant bank at no time departed from its capacity as agent. It claimed no title or possession and made no use of and had no beneficial interest in the check or the funds arising therefrom in the course of its duty as such collecting agent. It had committed no tort, and its detention of the check during the progress of collection was not wrongful. Its acts were just the same as though plaintiff had deposited the check in her own bank. No demand was made on it to pursue any other course or for restoration of the proceeds. (*Gillet* v. *Roberts,* 57 N. Y. 28; *Coleman* v. *Francis,* 102 Conn. 612; 129 A. 718.) In acting solely as an agent of the Globe Bank, at its direction and without any knowledge, actual or constructive, of any preceding or subsequent wrongful conversion, and by paying the money to the bank from which it received the check, it was exonerated from liability. (*Ledwith* v. *Merritt,* 74 App. Div. 64; affd., 174 N. Y. 512; 2 C. J. p. 827, and cases cited.) Therefore, regardless of whether the plaintiff's testimony was so contradictory, against the probabilities and incredible, as not to raise a question of fact, we are of opinion that there was no error in dismissing the complaint as to the defendant bank. Reaching this conclusion, it is unnecessary to consider the defenses of waiver, estoppel and ratification.

The other defendants offered evidence from witnesses, some of whom were disinterested. Mr. Terrell testified concerning his visits to Brooklyn with plaintiff and his presence at plaintiff's home when Handrulis was there in August, 1931, or at some later time. Nothing was said at that time about any conversion of money, nor did plaintiff accuse Handrulis of misappropriating the money or converting the check in suit.

Mr. Greene, who represented plaintiff in the City Court of Yonkers, testified that he stated to the city judge in her presence

that she had authorized Handrulis to cash the check, but to keep $3,000 and return the balance to her. This was after she had given her attorney the statement to which reference has heretofore been made.

Anna Barran, who entertained the plaintiff in her apartment in Brooklyn over the week end of August first, testified that the plaintiff " lent him this money, this check," and that he gave her the note there and nothing was said about safekeeping over the week end. The check and the note were given in her presence. Plaintiff was there for three days and left Tuesday after lunch. Handrulis was there each day.

Defendant Sarah Alkoff testified that her husband did plumbing work for Handrulis, and the latter brought her this check and asked her to deposit it because he had no bank account. This she did and a little later checked out the entire amount to Handrulis, receiving nothing of the proceeds.

Defendant Handrulis testified that he had been indicted for grand larceny in 1927, for which crime he was convicted and sentenced about January 20, 1932. His testimony was to the effect that plaintiff had agreed to make him a loan and gave him the check, and he gave her the note for the same amount, all in the presence of Mrs. Barran. He testified further as to the subsequent loans and the proceedings in the City Court of Yonkers, and that thereafter he had paid Mrs. Soma about $600.

The motion to dismiss the complaint as to defendant Alkoff was granted. If the plaintiff's story is to be taken as true, Alkoff was technically liable for conversion, although she had no personal guilt and received no ultimate benefit in cashing the check. (*Pierpoint* v. *Hoyt,* 260 N. Y. 26, 29, 30.) In addition to the facts recited we have in mind that at the time plaintiff claims she gave Handrulis the check for safekeeping she was about to return to her home in Yonkers where she could have deposited the check in her own bank the next morning, and that she was quiescent for nearly four years before bringing this action for conversion.

We must then consider whether in this case the usual rule may be applied to the effect that the evidence of plaintiff must be regarded in its most favorable light and with the favorable inferences drawn therefrom. We think the rule is not applicable. When the testimony of a plaintiff, taken as a whole and in connection with other credible evidence, is so contradictory and against the probabilities and beyond reason that it overtaxes ordinary credulity, it may be regarded as incredible and as raising no question of fact. (*Garten* v. *General Accident, F. & L. Assur. Corp., Ltd.,*

206 App. Div. 154, 156; *Cantor* v. *National Surety Co.*, 208 id. 370, 373; *Szpyrka* v. *International Railway Co.*, 213 id. 390, 393; *Trudell* v. *New York Rapid Transit Corp.*, 248 id. 787.) In that view " ' insufficient evidence is, in the eye of the law, no evidence,' " or at least " ' there is none that ought reasonably to satisfy a jury that the fact sought to be proved is established.' " (*Matter of Case*, 214 N. Y. 199, 203, 204.) Under such circumstances the court may dismiss the complaint or direct a verdict. (Civ. Prac. Act, § 457-a; *Bank of United States* v. *Manheim*, 264 N. Y. 45.) The complaint was properly dismissed as against defendant Alkoff.

The motion of defendant Handrulis to dismiss the complaint was denied, and the question of his liability was submitted to the jury, which found a verdict for plaintiff. This verdict was subsequently, on motion, set aside and a new trial granted.

By the same rule applied to the case against defendant Alkoff, the motion was properly granted. The verdict had no factual basis. Whilst there was no conversion of the check, there is a question of fact as to whether, instead of following the instructions of plaintiff, Handrulis did divert the funds received therefrom in whole or in part, and was, therefore, guilty of the conversion thereof. That issue remains to be tried, perhaps with some further amendment of the pleadings. Therefore, the order should be affirmed.

It follows that the judgments for the defendant bank and defendant Alkoff should be affirmed, with costs to each defendant. The order granting a new trial as against defendant Handrulis should be affirmed, with costs to abide the event.

Present — CARSWELL, DAVIS, JOHNSTON, ADEL and CLOSE, JJ.

Judgments in favor of defendant Alkoff and defendant Federal Reserve Bank of New York unanimously affirmed, with costs to each defendant.

Order setting aside verdict as against defendant Handrulis and granting a new trial as to him unanimously affirmed, with costs to abide the event.