Joseph Garten, Respondent, *v.* General Accident, Fire and Life Assurance Corporation, Ltd., of Perth, Scotland, Appellant.

Fourth Department, June 29, 1923.

Insurance — burglary insurance — action to recover for furs stolen — liability under policy was conditioned on insured keeping books of account — proper books of account from which loss could be ascertained were not kept — verdict in favor of plaintiff was excessive — new trial granted.

The verdict of the jury in this action to recover under a burglary insurance policy the value of furs stolen from plaintiff's store is excessive and against the weight of the evidence, since it appears that the amount of the recovery is approxi-

mately one-third of the total inventory value of furs in plaintiff's store less than one month before the burglary; that there were over eight hundred pieces of fur in the store; that the burglars were discovered as they were leaving the store and some of the furs were then recovered and other furs were recovered when the burglars were captured, and furthermore, the plaintiff did not keep books of account, which was necessary under the policy as a condition to the defendant's liability, from which the stock on hand at the time of the burglary and the stock on hand immediately thereafter could be ascertained without resorting to the memory of the plaintiff.

However, inasmuch as such books as the plaintiff did keep may form a basis of items of some actual loss which it appears may have been sustained, the complaint is not dismissed but a new trial is granted.

APPEAL by the defendant, General Accident, Fire and Life Assurance Corporation, Ltd., of Perth, Scotland, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 18th day of April, 1922, upon the verdict of a jury, and also from an order entered in said clerk's office on the 19th day of April, 1922, denying defendant's motion for a new trial made upon the minutes.

*Gibbons & Pottle* [*Frank Gibbons* of counsel], for the appellant.

*George C. Riley,* for the respondent.

DAVIS, J.:

Between the hours of one and two A. M. on February 1, 1921, burglars entered the store of the plaintiff at the corner of Elmwood avenue and Utica street in the city of Buffalo. The plaintiff there conducted the business of ladies' tailor and furrier. He had in stock at the time a considerable number of furs.

Entrance was gained by breaking the glass door of the store. They also broke a glass show case. A policeman 300 feet away heard the crash and ran toward the store. He saw a man coming out through the broken door with his arms full of furs. He shot him with his revolver and the man fell in the gutter. Another man came out immediately after and ran west along Utica street toward the rear of the building. The officer fired at the second burglar, who fell within about 10 feet of an automobile standing there. Before the officer could reach him, he got up and jumped upon the running board of the automobile which immediately started away and avoided pursuit. The officer found a few fur garments lying where the second burglar fell in the street, and he did not see him pick up any furs when he jumped on the automobile. In the meantime the first burglar had got to his feet and made off. Some furs were found where he fell. Whether he carried any with him does not appear. The loose furs were immediately gathered up and taken charge of by the police.

**156** GARTEN *v.* GENERAL ACCIDENT, F. & L. ASSUR. CORP., LTD.

Fourth Department, June, 1923. [Vol. 206

Both of the wounded burglars were subsequently apprehended and convicted of burglary. Other furs were recovered at that time.

The plaintiff had a policy of burglary insurance issued by the defendant company. This action is to recover for his alleged loss. One of the " special agreements " in the policy provides as follows: " The corporation shall not be liable *. * * (4) Unless books and accounts are kept by the assured in such manner that the exact amount of loss may be accurately determined therefrom by the corporation."

The principal question presented is whether or not the plaintiff complied with the agreement in the policy in keeping such books and accounts. The demand made by plaintiff in the complaint for the loss sustained was apparently too modest, for judgment was asked for only $2,152. During the trial the complaint was amended to make the demand $2,427; and the jury found the plaintiff's loss to be $2,548.35.

We cannot believe that under the evidence such an amount of loss as was found by the jury was actually sustained. The total inventory of plaintiff's furs, taken January 17, 1921, was $6,422.50. The value of the furs recovered on the spot by the policeman amounted to $248, and the value of those subsequently recovered when the burglars were arrested was $345, making a total of $593 recovered and restored to plaintiff. It overtaxes the credulity of a person of ordinary judgment to believe that burglars could, under the circumstances detailed, select thirty-seven of the most valuable furs representing nearly one-half the value of the total stock in the store, which consisted of at least eight hundred and thirty-six pieces, and get away with them, when the only two that appeared to be active in getting the furs were limited in their time of operation to about that required by the policeman to run 300 feet, and where both were shot down as they emerged from the store.

Where there is evident merit in the claim, and the insured has made a *bona fide* effort to comply with the provisions of the policy in keeping honest books and accounts, however crude and unscientific they may be, the courts will adopt a liberal interpretation of what constitutes books of account, to the end that the insurer will be held to perform its contract. (*Leiman* v. *Metropolitan Surety Co.,* 111 N. Y. Supp. 536; *Schwartz* .v. *Metropolitan Surety Co.,* 113 id. 66.) This court so held in affirming a judgment in *Nashek* v. *General Accident, Fire & Life Assurance Corp., Ltd.* (202 App. Div. 826).

But this policy of the law will not be extended to permit the. insured to take advantage of the fortuitous circumstance of an

actual burglary to reap a large profit out of his policy. On the other hand, the provision in the policy will be given such reasonable interpretation as will protect the insurer against fraudulent and excessive claims. (*Harris* v. *General Accident, Fire & Life Assurance Corp., Ltd.*, 187 N. Y. Supp. 291.)

The plaintiff had had a prior experience in burglary in the same store, and in burglary insurance. He did not keep books and accounts in the sense that those terms are ordinarily understood. He kept on file invoices of goods purchased. He had check books and canceled vouchers showing payments of bills and expenses. On the check stubs he entered the amount of cash received on sales ordinarily with a note of the person's name from whom received and what deposits he made in the bank. He kept an order book, a printed form, in which to record the orders of garments to be made for customers. It contained blank spaces for the date, name and residence of the customer, the style of the garment, measurements, price and other items. Often many of these items were omitted, the omissions including the date, the style of garment and the price, besides others less material. Nowhere, so far as I can discover, was there any record kept of the amount of furs used in any order, the cost of other material, of labor, the item of profit or any other data which would enable either the plaintiff unassisted by his memory, or any other person, to check up the invoices and his sales, and to determine with any degree of accuracy the amount of stock on hand at a given time. An accountant selected to examine his books could reach no conclusion as to his loss. The plaintiff himself by a written statement before the trial and repeatedly in his testimony, admitted that there was no way of determining the amount of his sales, of his stock or his loss by his books without resort to his memory.

I have not overlooked the fact that there was an inventory taken by the plaintiff and his brother about two weeks before the burglary and that there is testimony that there were no sales of furs after that; and that another inventory was taken the next morning in the presence of representatives of the defendant showing what stock he then had on hand. In the absence of the provision in the policy already referred to, this might have been sufficient to establish his loss. (*Ingersoll* v. *United Surety Co.*, 141 App. Div. 527.) Nevertheless, the credible proof does not establish the amount of loss found by the jury, and the verdict should not stand. Such a verdict in an action on a policy of this nature must be based upon proof contained in some kind of books and accounts which fairly show the stock on hand at the time of the burglary, without being supplemented in major details by the memory of an interested

party. Such books do not need to be bound volumes or the modern, scientific loose leaf records utilized by banks and other business concerns where the highest degree of accuracy is required; but they must be of such a character so that by ordinary inspection the actual loss may be determined with a fair degree of accuracy. (*Pearlman* v. *Metropolitan Surety Co.*, 127 App. Div. 539; *Rosenberg* v. *People's Surety Co. of N. Y.*, 140 id. 436; *Wolowitch* v. *National Surety Co.*, 152 id. 14.)

We may readily say that these books of the plaintiff do not disclose on their face any such loss as has been found. But it is possible on a new trial that these books, crude as they are, may form the basis of items of some actual loss, which it appears may have been sustained. Therefore, instead of dismissing the complaint, we think a new trial should be granted.

The judgment and order appealed from should be reversed on the law and the facts and a new trial granted, with costs to the appellant to abide the event.

All concur.

Judgment and order reversed on the law and facts and new trial granted, with costs to appellant to abide event.