GEORGE MORD, Respondent, *v.* NEW YORK INDEMNITY COMPANY, Appellant.

Second Department, March 19, 1926.

Insurance — robbery insurance — action by assignee of assured to recover on policy — defense that proper books were not kept — furs insured were in possession of assured as bailee — assured did not know value but offered proof from books of owners — assured's books showing complete information except value complied with policy — defendant liable under rider to amount of additional insurance.

In an action by the assignee of the assured to recover on a policy of burglary insurance in which the defense interposed was that the assured had not kept books in compliance with the terms of the policy, in which it appears that the assured was engaged in dressing furs belonging to other persons and that it did not know the value of the furs, the books kept by the assured which show the date of receipt of the furs by the assured, the number and description thereof, the name and address of the owners and the date of redelivery to the owners and the value of the work done, is a sufficient compliance with the provision in the policy requiring the keeping of books in view of the fact that the defendant had the right to examine the books of the owners and that the assured offered to produce the books of the owners to show the value of the furs.

The defendant is liable under a rider attached to the policy to the amount of the additional insurance provided for therein.

YOUNG, J., dissents.

APPEAL by the defendant, New York Indemnity Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 19th day of June, 1925, upon the verdict of a jury.

*Sidney J. Loeb* [*Leon M. Prince* with him on the brief], for the appellant.

*Alfred B. Nathan*, for the respondent.

KELLY, P. J. We are of opinion that the books and accounts kept by the assured, the Star Fur Dressers Company, the plaintiff's assignor, complied with the provisions of the policy. As indicated by its name, the assured was not the owner of the stolen skins. These skins were delivered to the assured by the owners and taken to the fur dressing factory in Greenpoint where they were treated by the assured and then returned to the owners. The Fur Dressers Company kept books showing the date of receipt of the skins, the number and description of the skins received, and the name and address of the owner. The books also showed the date of redelivery of the skins to the owner and the value of the work done thereon by the fur dressing company. The books did not state the value of the skins, and from the very nature of the business of the assured,

the value of the skins was not known to the fur dressing company, nor was the value of the skins considered in fixing the cost of the work. All of these books were exhibited to the insurance company after the loss. The fur dressing company was not the owner of the skins; it was the bailee thereof. The policy by its express terms covered property held in trust by the assured, while being conveyed to and from the place of business of the assured. The insurance company dealing with the assured in this case must be presumed to know that they were not fur merchants buying and selling furs or keeping a stock of merchandise on hand. They were, as indicated by their name, engaged in the business of dressing furs, treating the fur-bearing skins owned by some one else and sent to them for treatment. So the policy issued by the defendant covered not only property of the Fur Dressers Company but also the property held by them in trust. It is expressly provided in the policy that in case of loss or damage to such property held in trust, the defendant company might adjust the loss either with the assured or with the owner or owners of the property, and payment to the owners constituted full satisfaction of any claim for such loss by the assured. A bailee may insure property in his hands up to the full value thereof, and can sue on such policy and recover on behalf of the bailor the actual loss sustained. (*Stillwell* v. *Staples*, 19 N. Y. 401, and cases cited; *Burke* v. *Continental Insurance Co.*, 184 id. 77, 82.) Under the terms of this policy, the owners after the loss could have sued the defendant without the consent of the Fur Dressers Company. The policy also provided that the insurance company had the right to call for the production of all books, papers and vouchers bearing in any way upon the claim, and for an examination under oath, not only of the Star Fur Dressers Company, but of their " associates in interest." It would seem that the owners of the property were associated in interest with the Star Company so far as the insured merchandise was concerned. The plaintiff, at the trial, had the owners of the merchandise in court ready to testify to the value of the property, and offered to prove that the insurance company had actually examined the books of account of the respective owners, but the evidence was not received because of the insistence of defendant's counsel that he based his motion for dismissal of the complaint solely upon the ground that the books of the Fur Dressers Company were not kept in accordance with the policy.

While I am inclined to think that this evidence was competent despite defendant's objection that it had no right to use the customers' books, and that it had " no relation with the customers," there can be no doubt that defendant, appellant, is here asserting

that it is not obliged to resort to any books other than those kept by the assured; that the precise amount of the loss must be disclosed on *their* books. I think the argument and the cases cited by appellant's counsel have no application to the situation disclosed here. As matter of fact the books of the Fur Dressers Company contained all the necessary information except the value of the goods sent to them for treatment, an important item to be sure, but one as to which from the very nature of the business the assured could make no entries in their books. They had no independent knowledge of the value of these goods at the time of their receipt. Their books gave the name and address of the owner, a description of the particular pieces of fur sent to the assured for treatment, with the day and date of receipt and redelivery. Where the assured is the owner of merchandise covered by an insurance policy and seeks to recover, it is only reasonable that his books and accounts should show reasonable compliance with the requirement of the policy and contain evidence of the value of the property. In the case of the assured in the case at bar, any statement on the books concerning the value of the skins consigned to it for treatment would necessarily be hearsay. But the books and accounts kept by the Fur Dressers Company and exhibited to the representatives of the insurance company after the loss, contained all the information possessed by the assured and enabled the insurance company to ascertain the exact information as to the value of the merchandise stolen. They had the absolute right to resort to the books of the owners of the property and to examine them under oath, as associates in interest with the assured.

" Where there is evident merit in the claim, and the insured has made a *bona fide* effort to comply with the provisions of the policy in keeping honest books and accounts, however crude and unscientific they may be, the courts will adopt a liberal interpretation of what constitutes books of account, to the end that the insurer will be held to perform its contract." (*Garten* v. *General Accident, F. & L. Assur. Corp., Ltd.,* 206 App. Div. 154, 156.) We have recently held that the courts should not take a narrow and restricted view of the clause relative to the keeping of books and accounts to defeat a claim otherwise unassailable. (*Lenzner* v. *National Surety Co.,* 209 App. Div. 464, opinion by RICH, J., citing *Harris* v. *General Acc. F. & L. Assur. Corp.,* 187 N. Y. Supp. 291, opinion by McCook, J., not officially reported.)

I think the learned trial justice might have held as matter of law that the books of the assured in this case complied with the policy, but at defendant's request the question was submitted to the jury and they found in favor of the plaintiff.

We have examined the additional point presented by the appellant upon this appeal, viz., that the liability of the defendant was limited to $10,000 instead of $20,000. We think the learned trial justice correctly held as matter of law that under the terms of the " rider " attached to the policy where defendant for additional premium increased its liability, as applied to the conceded conditions existing at the time of the robbery, the defendant was liable for the increased amount.

The judgment should be affirmed, with costs.

RICH, MANNING and LAZANSKY, JJ., concur; YOUNG, J., dissents, being of opinion that plaintiff cannot recover under the terms of the policy because of the failure of the assured to keep books and accounts so that the amount of loss could be accurately determined therefrom.

Judgment affirmed, with costs.