ADOLPH LICHT, Respondent, *v.* NEW YORK INDEMNITY COMPANY, Appellant.

(Argued December 6, 1928; decided December 31, 1928.)

*Sidney J. Loeb* and *Leon M. Prince* for appellant. The policy provisions were violated in that books and

accounts were not kept by the plaintiff in such manner that the exact amount of the loss could be accurately determined therefrom by the defendant. (*Wolowitch* v. *National Surety Co.*, 152 App. Div. 14; *Pearlman* v. *Metropolitan Surety Co.*, 127 App. Div. 539; *Harris* v. *General Accident, Fire & Life Assurance Corp.*, 187 N. Y. Supp. 291; *Rosenberg* v. *People's Surety Co.*, 140 App. Div. 436; *Danerhirsch* v. *Travelers Indemnity Co.*, 202 App. Div. 207; *Mord* v. *New York Indemnity Co.*, 216 App. Div. 252; 244 N. Y. 589; *Zeltner* v. *Fidelity & Deposit Co.*, 220 App. Div. 21.)

*Alfred B. Nathan* and *Emil Weitzner* for respondent. Plaintiff complied with the provision of the policy with reference to the keeping of books and accounts. (*Zeltner* v. *Fidelity & Deposit Co.*, 220 App. Div. 21; *Slocovich* v. *Orient Mutual Ins. Co.*, 108 N. Y. 56; *Appel* v. *Insurance Co.*, 86 App. Div. 83; 180 N. Y. 514; *Sutter* v. *Vanderveer*, 122 N. Y. 652; *Kirtz* v. *Peck*, 113 N. Y. 222; *Mord* v. *New York Indemnity Co.*, 216 App. Div. 252; 244 N. Y. 589; *Garten* v. *General Acc. F. L. Ins. Co.*, 206 App. Div. 154; *Royal Silk Co.* v. *Ins. Co.*, 244 N. Y. 547; *Lenzner* v. *National Surety Co.*, 209 App. Div. 464; *Leiman* v. *Metropolitan Surety Co.*, 111 N. Y. Supp. 536.)

LEHMAN, J. The plaintiff, a dealer in furs, procured from the defendant a $10,000 policy upon the furs, insuring the plaintiff against a loss thereof through burglary. He asserts that about six months later his shop was entered by burglars and furs of a value exceeding $17,000 were removed therefrom.

The policy provided " that the company shall not be liable * * * unless books and accounts are kept by the assured and are kept in such manner so that the exact amount of the loss can be accurately determined therefrom by the company." The defendant asserted that the provisions of the policy in reference to the keeping of books were not observed by the plaintiff.

The case for the plaintiff was largely made through a stock book which had been kept by him. This contained an inventory of stock taken by the plaintiff when the books were first opened. It showed (1) garments purchased by the plaintiff for resale, (2) skins purchased by the plaintiff to be used for manufacturing and repairs, and (3) garments manufactured by the plaintiff. Concededly the items of garments purchased by the plaintiff showed valuations above the actual cost of the garments; indeed above the sales price of garments which were sold. The purpose of the exaggeration was to enable the plaintiff to assert to customers that he was selling the garments below costs. The items of skins purchased by the plaintiff showed the actual cost of the skins which were used in garments made up by the plaintiff. These items were not intended to be shown to customers, for customers would not know, unless informed by the plaintiff, what particular skins were used in the manufacture of a particular garment. Without such information and information as to the cost of manufacture, a customer could not determine the cost of any garment manufactured by the plaintiff. Neither could an accountant examining the books of the plaintiff.

The plaintiff asserts that the cost of the garments manufactured by him was correctly estimated by him and entered into the inventory or stock book correctly. He supplied by oral testimony the items which he says entered into the estimated cost of the garments manufactured by him. The plaintiff further showed invoices for finished garments which he had bought. He claimed that these invoices represented the actual cost of garments which were entered at a fictitious valuation.

The jury chose to believe the plaintiff's testimony that he had honestly entered the estimated cost of the garments he manufactured in his book, though he concedes that the price of finished garments was fictitious. It chose to believe that the plaintiff showed the correct invoices for

the finished garments. Indeed, apparently it chose to believe anything the plaintiff asserted, even that burglarious entry into and exit from his premises had been made through a hole fourteen inches high and eight inches wide. Perhaps we may not say that the plaintiff's testimony is so evidently false that as a matter of law it constitutes no evidence.

We may assume that all this evidence is true. The parties have, however, stipulated that the assured must furnish other evidence than his own testimony as to the amount of his loss. He agreed to keep books and accounts " in such manner that the exact amount of the loss can be accurately determined by the company." If he failed to keep such books the jury might not estimate the loss from oral testimony.

It has been said that the " courts should not take a narrow and restricted view of the clause relative to the keeping of books and accounts to defeat a claim otherwise unassailable." (Mord v. New York Indemnity Co., 216 App. Div. 252; affd., 244 N. Y. 589, and cases there cited.) We accept that policy as a guiding principle. Within the meaning of the contract of insurance, honest books and vouchers, though the entries be made in a crude, unscientific manner and require explanation and even supplement by oral statement, may yet supply the basis for an accurate estimate of the loss. At least, however, the books must be intended to reflect truly the cost or value of the goods insured. Books intended to deceive are not in any true sense books of account.

From the inventory or stock book, the company might determine what garments were unsold and in stock at the time of the burglary. That book would not disclose the true price of garments bought by the plaintiff. It is said that the invoices show the true price, but a comparison of invoices and book price shows that the invoice price does not match the book price of any garment. Only when we obtain the clue to the discrepancy through

the testimony that the book price is fictitious, are we in a position to use the invoices to determine the value of the garments which have been stolen. Then we must begin determination of the loss by discarding the book value.

Perhaps in some instances the description of the garments in the invoices and the description in the books is so similar as to justify finding of identity. Not in all. The plaintiff's testimony shows that in some instances there is no basis for identification of items except the word of the plaintiff that the garment represented by a book entry is covered by a particular invoice. Nor are we in better position in regard to the cost or value of garments manufactured by the plaintiff. There the book value is in the main merely the estimate of the plaintiff, and rests upon his own word as to the items of that cost or value. If the plaintiff's book had been honestly kept, the book entry might be sufficient as a basis for computation of loss. Books which are intended to represent the true condition of a business in themselves contain some guaranty of accuracy. Even though some items are defectively entered or computed, the books at least give some guaranty of good faith and honesty. Not so, where the books are not intended to reflect the condition of the business, and the business man who kept them is compelled to concede that at least some of the items were entered to deceive. Then there is no substantial probative force in any entries of value in the books. Loss in such case cannot be computed from the books and accounts, but only from the testimony of the claimant.

The plaintiff agreed to keep books and accounts from which the loss might be computed. He chose to keep his books dishonestly, to deceive his customers. Books so kept constitute no basis for computation of any loss. The same policy which requires the courts to hold that the terms of the contract of insurance are complied with by a reasonable and honest effort to keep accurate books and

accounts, requires also a decision that dishonest books intended to deceive customers or creditors are insufficient for that purpose.

The judgment of the Appellate Division and that of the Trial Term should be reversed and the complaint dismissed, with costs in all courts.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS, KELLOGG and O'BRIEN, JJ., concur.

Judgments reversed, etc.