FACET INDUSTRIES, INC., Respondent, v PHILIP G. WRIGHT, Individually and on Behalf of Certain Underwriters at LLOYD'S OF LONDON, Subscribing to Policy No. 795/PSA28285A, Appellant.

First Department, August 11, 1983

#### APPEARANCES OF COUNSEL

*Steven A. Peisak* of counsel (*Stanley H. Solomon* with him on the brief; *Standard, Weisberg, Heckerling & Rosow, P. C.,* attorneys), for appellant.

*Ted Trief* of counsel (*Joel S. Sankel,* attorney), for the respondent.

#### OPINION OF THE COURT

KASSAL, J.

This action was brought to recover upon a "Jewelers' Block Policy", with plaintiff as the named insured. The issue raised on the appeal is the construction of an exclusion from coverage in the policy and its applicability to the facts herein, which the parties agreed to by stipulation.

Defendant, a representative of Lloyd's Underwriters issued a jewelers' block policy, providing coverage insofar as applicable here, of $100,000, with a $10,000 per claim

deductible for the period March 30, 1981 to March 29, 1982. The all-risk policy excluded from coverage: "(A) Loss, damage or expense caused by or resulting from sabotage, theft, conversion or other act or omission of a dishonest character (1) on the part of the Assured or his or their employees, or (2) *on the part of any person to whom the property hereby insured may be delivered or entrusted by whomsoever for any purpose whatsoever,* unless such loss, damage or expense arises while the goods are deposited for safe custody by the Assured, officer of the corporation, member of the firm or salesman while travelling, or while the goods are in the custody of (a) the Post Office Department as first class registered mail, or (b) a carrier mentioned in Section 2, or (c) a person serving as a mere porter or helper not on the payroll of the Assured." (Emphasis added.)

In April, 1981, Paul Sergio, as a representative-buyer for International Diamond and Gem (International) of Los Angeles, California, contacted Steve Gayne, plaintiff's employee, to obtain merchandise to be sold by International. Since plaintiff had no prior business dealings with International, references were requested. A letter to plaintiff, dated April 14, 1981, from Randi Fleissner, secretary to and wife of M. Frontero, International's president, referred to Mr. Gayne's conversation with "our buyer Paul" and furnished as references, two jewelers in Los Angeles, who subsequently provided plaintiff with satisfactory references.

In early May, 1981, Paul Sergio telephoned the secretary and general manager of plaintiff, Sol Geldzahler, to order diamonds on memorandum. Thereafter, on May 13, 15 and 18, 1981, plaintiff shipped assorted lots of loose diamonds by express mail to International, with a total memorandum price of $102,428.50. On May 22, 1981, Geldzahler telephoned Frontero of International to confirm delivery. International's president had just returned to work following a convalescence from a heart attack and expressed unfamiliarity with the order. Nevertheless, the express mail delivery receipts are included in the record and they do reflect actual delivery to International. On May 29, 1981, Geldzahler wrote to International to confirm the

consignment, including a list of the merchandise and requested return of some of the gems which, according to International's buyer, were to have been returned by May 19. On June 1, 1981, Frontero advised Geldzahler that the diamonds had been stolen by Paul Sergio, concededly International's employee and buyer and that a warrant had been issued for his arrest. After submission of a claim to the defendant insurance carrier and the filing of a proof of loss, defendant denied coverage, based upon condition 5 (A) of the policy, which excluded any loss resulting from theft, conversion or other dishonest act "on the part of any person to whom the property hereby insured may be delivered or entrusted by whomsoever for any purpose whatsoever".

Special Term, in granting plaintiff's summary judgment motion and in denying defendant's cross motion for the same relief, found there was coverage and that the exclusion was inapplicable to the admitted facts in this case. In construing the clause, the court found significant that the first portion of the exclusion referred to dishonest acts by the assured, expressly stating "or his or their employees", whereas the second portion, which referred to dishonesty by "any person to whom the property hereby insured may be delivered or entrusted by whomsoever for any purpose whatsoever", did not similarly include the reference to the employees of such person. The court concluded that the omission was dispositive and held that the theft of the property by an employee of International was within the scope of coverage under the policy. We disagree.

We cannot subscribe to such a construction which distorts the clear language of the policy and overlooks the underlying purpose of the exclusion. The interpretation and construction of a policy of insurance, as is the case with other written instruments, poses a question of law for the court (*Dwight v Germania Life Ins. Co.*, 103 NY 341; *Rickerson v Hartford Fire Ins. Co.*, 149 NY 307), except "when the language employed is not free from ambiguity, or when it is equivocal and its interpretation depends upon the sense in which the words were used in view of the subject to which they relate, the relation of the parties and the surrounding circumstances properly applicable to it, the intent of the parties becomes a matter of inquiry, and

the interpretation of the language used by them is a mixed question of law and fact." (*Kenyon v Knights Templar & Masonic Mut. Aid Assn.,* 122 NY 247, 254; see, also, *Hartford Acc. & Ind. Co. v Wesolowski,* 33 NY2d 169, 172; *Stainless, Inc. v Employers Fire Ins. Co.,* 69 AD2d 27, 32, affd 49 NY2d 924.) As was observed by the Court of Appeals in *Hartford Acc. & Ind. Co. v Wesolowski* (*supra,* p 172): "If there is ambiguity in the terminology used, however, and determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence, then such determination is to be made by the jury * * * On the other hand, if the equivocality must be resolved wholly without reference to extrinsic evidence the issue is to be determined as a question of law for the court."

Where there is no patent ambiguity, the construction to be accorded depends upon the clear sense and meaning of the words used, with the language taken and understood in its plain and ordinary meaning (*Johnson v Travelers Ins. Co.,* 269 NY 401, 408). Wherever possible, operation, effect and meaning must be given to every sentence, clause and word of an insurance policy, with reasonable effort made to harmonize and give effect to all parts of the contract (*Perth Amboy Drydock Co. v New Jersey Mfrs. Ins. Co.,* 26 AD2d 517). The meaning of the language used must be found in the common sense and common speech of the average person (*Lewis v Ocean Acc. & Guar. Corp.,* 224 NY 18, 21), in the light of "the reasonable expectation and purpose of the ordinary businessman when making an insurance contract" (*Burr v Commercial Travelers Mut. Acc. Assn. of Amer.,* 295 NY 294, 301), or the meaning "which would be given it by the average man" (*Berkowitz v New York Life Ins. Co.,* 256 App Div 324, 326).

Under general principles of construction, where an ambiguity exists, it must be construed against the insurer as the party who prepared the contract (*Hartol Prods. Corp. v Prudential Ins. Co. of Amer.,* 290 NY 44, 49; *Birnbaum v Jamestown Mut. Ins. Co.,* 298 NY 305; *Bronx Sav. Bank v Weigandt,* 1 NY2d 545, 551; *Miller v Continental Ins. Co.,* 40 NY2d 675, 678). The same principle applies in construing an exclusion, where the carrier must demonstrate that

its interpretation is the only construction that can be fairly placed thereon. (*Sincoff v Liberty Mut. Fire Ins. Co.*, 11 NY2d 386, 390.) However, if the language used is clear and there is no uncertainty in interpreting the extent of coverage, the court should not create ambiguity when none exists, since to so construe the policy would vary the contract contrary to the intention of the parties (*Breed v Insurance Co. of North Amer.*, 46 NY2d 351, 355). Where the language employed is unequivocal, the contract should be interpreted to give effect to the intention thus expressed by the parties.

Thus, as applied here, the two clauses contained in the above exclusion are addressed to two distinct factual situations. In both, the insurance carrier has expressed in unmistakable terms its intent to limit the scope of coverage or risk, the extent of which was undoubtedly reflected in the premium paid by the assured. The first exclusionary clause, referring to theft or dishonest act by the assured or his employees, excludes a type of loss generally covered by other usual and available insurance, i.e., fidelity insurance. The second clause excludes a loss resulting from the theft or dishonesty by "any person" to whom the insured property had been "delivered or entrusted by whomsoever for any purpose whatsoever". In construing this clause, Special Term found that the only excluded risk was the theft or dishonest act committed by the person to whom the insured property had been entrusted and that dishonesty by an employee of such person was included as a risk.

However, this ignores the obvious purpose to be accomplished, namely, to exclude risk of loss for theft, conversion or dishonest act while the insured property was with a third party to whom it had been entrusted. Again, this type of loss is invariably covered by fidelity policies, which afford coverage for the risk of loss by employee theft, including property of another entrusted to and in the possession of the insured. In concluding that the exclusion would only apply where the theft was by the person to whom the property had been delivered and not from that person by his employee, Special Term improperly shifted the emphasis away from the insured who had entrusted the property and instead, focused upon the intention of the

party to whom the property had been delivered. This conflicts with the leading authorities in this and other States, which, in construing the exclusion, have held the operative standard to be the intention or state of mind of the insured who had delivered or entrusted the item to another (*Abrams v Great Amer. Ins. Co.*, 269 NY 90; *Camera Mart v Lumbermens Mut. Cas. Co.*, 58 Misc 2d 448, affd 64 Misc 2d 860; accord *David R. Balogh, Inc. v Pennsylvania Millers Mut. Fire Ins. Co.*, 307 F2d 894).

In *Abrams v Great Amer. Ins. Co.* (*supra*), plaintiff had delivered two articles of jewelry to a broker, Rose Friedman, who secured possession to effect a sale to a prospective customer. Instead, Friedman absconded with the jewelry to France. Subsequently, she was extradited and pleaded guilty to grand larceny. The insured, relying upon Friedman's preconceived intent to steal the jewelry, claimed that the exclusion was inapplicable since there was no entrustment. In rejecting the assertion, the Court of Appeals held (*supra*, p 92) that the word "entrusted" was to be given "its ordinary meaning, such as the average policyholder of ordinary intelligence, as well as the insurer, would attach to it." The court held (269 NY, at pp 92-93): "When the word 'entrusted' appears in the contract the parties must be deemed to have entertained the idea of a surrender or delivery or transfer of possession with confidence that the property would be used for the purpose intended by the owner and as stated by the recipient. The controlling element is the design of the owner rather than the motive of the one who obtained possession. Because plaintiff was deceived and his confidence was abused, he *entrusted* his property to a thief. The meaning of the word as used in this contract is such 'as common thought and common speech would now imagine and describe it.' (*Van Vechten* v. *American E. F. Ins. Co.*, 239 N. Y. 303, 307.)"

Similarly, in *David R. Balogh, Inc. v Pennsylvania Millers Mut. Fire Ins. Co.* (*supra*), the United States Court of Appeals for the Fifth Circuit followed the interpretation of the exclusion adopted by the Court of Appeals in *Abrams* (*supra*). There, the insured had entrusted an emerald to a known trader in gems, who, in turn, delivered the emerald on memorandum to the customer, who absconded. The

third party was subsequently apprehended but acquitted upon trial. In concluding that the jewel had been "delivered or entrusted" to the third party, sufficient to invoke the exclusion, the Fifth Circuit adhered to the rationale of *Abrams,* rejecting the contrary conclusion by the California Supreme Court in *Freedman v Queen Ins. Co. of Amer.* (56 Cal 2d 454) and held (307 F2d, at p 897): "We find ourselves in agreement with the Abrams case. The test is the intent or state of mind of the person turning the item over to another, not the intent or state of mind of the person receiving the item. The risk that someone will swindle or trick the insured is excepted from the coverage by its plain terms 'dishonest[y] * * * on the part of any person to whom the property may be delivered or entrusted * * *' To follow the California decision would be to hold that coverage depended upon whether the other party conceived of his dishonest plan before or after he took possession of the property. We do not think that this is the test set out in the language of the policy before us."

The idea of a jewelers' block policy was originally conceived by a Lloyd's of London underwriter at or about the turn of the century (see *Woods Patchogue Corp. v Franklin Nat. Ins. Co. of N. Y.,* 5 NY2d 479, 482). Having originated in London, the English cases are instructive as to the interpretation to be adopted in construing the entrustment clause of the policy. In fact, in reaching its determination in *Abrams v Great Amer. Ins. Co. (supra,* p 93) our Court of Appeals observed: "Our view of the case places us in agreement with the decision in *Lake* v. *Simmons,* decided by the Court of Appeal ([1926] 2 K.B. 51), rather than the opposite decision by the House of Lords in the same case ([1927] A.C. 487)."

In *Lake v Simmons* (2 K.B. 51 [1926], *supra*), the Court of Appeal, Kings Bench Division, interpreted the entrustment clause of the policy as "excluding from the risk undertaken by the insurer losses which may be likely to arise from the misplaced confidence of the assured in persons whom he employs, or with whom he does business" (*supra,* p 61). In adopting as a standard the intention of the assured and not the intent or state of mind of the person to whom the jewelry had been delivered, the Lord Justice in

*Lake v Simmons* held (*supra*, pp 63-64): "I turn now to the word 'entrusted.' In its ordinary and natural meaning the expression includes a case of misplaced confidence, as well as a case of well justified confidence. It covers the case of a dealing with a dishonest man as well as that of a dealing with an honest one. It is only by associating the expression with particular descriptions of theft that it is possible to deprive the expression of its full and natural meaning. Once the conclusion is arrived at that the parties to this contract, when using the word 'theft' in the exception clause, intended to include all classes of theft, the argument in favour of putting some exceptional or technical meaning on the expression 'entrusted' loses its force. In the clause defining the property insured the expression 'entrusted' is used in its widest sense as covering an entrusting to any person on condition of sale or return, for valuation or inspection or for any other purpose. *It appears to me that what the parties had in mind in this provision are the acts and intention of the assured apart altogether from any question of the intention of the person to whom the goods are entrusted.* The same is, I think, true of the exception clause." (Emphasis added.)

In *Gerder & Co. v Evans* (45 Lloyd's List L Reps 308), plaintiffs, pearl and diamond merchants, had entrusted certain jewelry, on memorandum, to one Leonard Tom, a jewelry broker. The court, rejecting Tom's claim that he had been forcibly robbed, found that the broker had staged the robbery as a device to convert the jewels. In directing judgment for the underwriting member of Lloyd's as insurer, the court held (*id.,* p 315) that the proof adduced established that the loss resulted from theft or dishonesty of the broker to whom the jewelry had been entrusted and, therefore, the loss was excepted from the terms of the policy: "I am satisfied, although it is a very painful decision to have to arrive at, that the defendants have established the words of par. 4 in their defence, that the loss suffered by the plaintiffs arose from theft or dishonesty committed by Leonard Tom, a broker to whom the jewellery was entrusted by the plaintiffs. Inasmuch as that brings the defendants within the exceptions clause, there must be judgment for the defendants in this action."

In our case, there is no dispute that the jewelry was delivered and entrusted by plaintiff to International and was subsequently stolen from the consignee by its buyer, Sergio, the one who had represented International in the transaction. Sergio's intention when he placed the order has no bearing on the issue. Inasmuch as the clear purpose of the exclusion was to except from coverage property no longer in the possession of the insured, having been delivered or entrusted to another, it does not matter at what point after the original transaction and delivery Sergio formulated an intent to appropriate the jewelry to himself. Nor is Sergio's employment status vis-à-vis International germane to the issue. From the point of view of both the insurer and the insured and the nature of the risk to be excluded, it is irrelevant whether the thief was the sole proprietor, a stockholder or an officer of the company to whom the property had been delivered or, on the other hand, an employee performing menial labor, like a messenger or delivery person. Special Term, however, having found significance in the omission in clause (2) of the word "employees" which had been used in clause (1), overlooked that the phrase in clause (2) "any person to whom the property * * * may be delivered or entrusted" is much broader in scope and clearly envisions a design to exclude from coverage certain losses when the property was not in the possession of the insured. This construction would also improperly and illogically eliminate from the exclusion any situation where, as here, insured property had been delivered or entrusted to a corporation or company, which could only act through its officers, agents or employees.

In the jewelry trade, it has been the long-standing custom for dealers or retailers, by way of memorandum receipts, to entrust or consign individual items to other dealers or retailers for possible sale by them to their customers. On occasion, this process continues on so that there may be several intervening parties to whom the jewelry has been entrusted. It is obvious that the insurer, in fixing a rate to cover its risk, does not assume responsibility all up and down the line for what may be a long chain of "entrustment" in the fullest sense of the word. So, too, it is equally logical to conclude that the employees of such

consignees are excluded from such original coverage under broad language like the policy involved herein.

Here, we are not concerned with the unique situation which confronted the court in *Camera Mart v Lumbermens Mut. Cas. Co.* (58 Misc 2d 448, *supra*), where the same standard was applied to find the exclusion inapplicable under the special facts in that case. There, after a telephone call from a person representing himself as "a representative of Candid Camera", a messenger appeared purportedly from "Candid Camera" and took possession of the insured equipment. However, Candid Camera never ordered the equipment and, accordingly, the property had been obtained and stolen from the insured by misrepresentation and trick since there had never been an entrustment to Camera Mart. Distinguishing the factual situation from that before the Court of Appeals in *Abrams v Great Amer. Ins. Co.* (269 NY 90, *supra*), Judge BIRNS, relying upon the misrepresentation as to the identity of the recipient of the merchandise at the outset, found that there was no entrustment and, accordingly, held that the exclusionary clause did not apply as a bar to recover on the policy.

The same standard applies to the stipulated facts in this case and logically compels the conclusion that the loss was excluded from the coverage contemplated by the parties and afforded by the policy. There is no dispute but that the jewelry was delivered on consignment to International and, while in the possession of that company, was stolen by its employee, Sergio. The loss falls squarely within the exclusion and, accordingly, the insurer properly rejected the claim.

Accordingly, the judgment, Supreme Court, New York County, entered January 10, 1983, on an order (IRVING KIRSCHENBAUM, J.), entered December 10, 1982, granting plaintiff's motion and denying defendant's cross motion for summary judgment, should be reversed, on the law, with costs, the judgment vacated, plaintiff's motion denied, defendant's cross motion granted and the complaint dismissed. The appeal from the said order entered December 10, 1982 should be dismissed as subsumed in the appeal from the judgment, without costs.

ALEXANDER, J. (dissenting). I would affirm the judgment below. The agreed statement of facts established conclusively that the diamonds were "delivered" and "entrusted" to International Diamond and Gem. It is also clear beyond peradventure that Sergio was an employee of International, and while it is true that the transaction was initiated by Sergio, it was in reference to *International* that plaintiff sought references and credit information, clearly evidencing that they envisioned "deliver[ing] or entrust-[ing] the jewelery to International." Thus, the very authority relied upon by the majority, compels the conclusion that the exclusionary provision, paragraph 5 (A) (2) of the policy, does not apply. "The test is the intent or state of mind of the person turning the item over to another, not the intent or state of mind of the person receiving the item" (*David R. Balogh, Inc. v Pennsylvania Millers Mut. Fire Ins. Co.,* 307 F2d 894, 897; see, also, *Abrams v Great Amer. Ins. Co.,* 269 NY 90).

And while it may be logical to conclude, based upon the custom of the trade, that where jewelry is consigned on memoranda, that "employees of such consignees are excluded from such original coverage under the broad language like the policy involved here" the policy clearly does not so provide and had the insurer so intended, the simple expedient of including appropriate language would have made that intention clear and unassailable. Any ambiguity or doubt in respect thereto must be resolved against the insurer under well-settled principles of construction, as observed by the majority.

Another of those general rules of construction is that an insurance policy should be construed liberally in favor of the insured and strictly against the insurer. (*Government Employees Ins. Co. v Kligler,* 42 NY2d 863.) Moreover, an interpretation or construction favoring the insurer should be sustained only where that interpretation or construction is the sole construction which can be fairly placed upon the words employed. (*Matter of Colonial Penn Ins. Co. v Salti,* 84 AD2d 350.)

This record does not inform us as to how Sergio came into possession of the gems after they were received by International or indeed whether he received them on Internation-

al's behalf. In the face of the stipulation that the gems were delivered to International, there is no factual predicate for any inference that International "entrusted" the gems to Sergio. (Cf. *David R. Balogh, Inc. v Pennsylvania Millers Mut. Fire Ins. Co., supra.*)

Ross and ASCH, JJ., concur with KASSAL, J.; MURPHY, P. J., and ALEXANDER, J., dissent in an opinion by ALEXANDER, J.

Judgment, Supreme Court, New York County, entered on January 10, 1983, reversed, on the law, the judgment vacated, plaintiff's motion for summary judgment denied, defendant's cross motion for summary judgment granted and the complaint dismissed. Appellant shall recover of respondent $75 costs and disbursements of this appeal. The appeal from the order of said court entered on December 10, 1982 is dismissed as having been subsumed in the appeal from the judgment, without costs and without disbursements.