6247 ATLAS CORPORATION and
The Merchants Bank of New
York, Plaintiffs,

v.

The MARINE INSURANCE CO., LTD., No. 2 A/C, The Threadneedle Insurance Co., Ltd., The Threadneedle Insurance Co., Ltd., A A/C, Indemnity Marine Assurance Co., Norwich Union Fire Insurance Society, Ltd., No. 1M A/C, Norwich Union Fire Insurance Society, Ltd., No. 1 A/C, Sovereign Marine & General Insurance Co., Ltd. S 81, The Tokio Marine & Fire Insurance Co. (UK), Ltd., Taisho Marine & Fire Insurance Co. (Europe), Ltd., and Storebrand Insurance Co., (UK), Ltd., Subscribing to Policy of Insurance Number 4S/00349/91,

and Henry Raymond Dumas, an Underwriter at Lloyd's, London, on Behalf of Himself and All Those Other Lloyd's Underwriters Subscribing to Policy of Insurance Number 4S/00723/91, Defendants.

No. 92 Civ. 7064 (RWS).

United States District Court,
S.D. New York.

April 17, 1996.

Mahoney & Keane, (Edward A. Keane, Lionel R. Saporta, of counsel) New York City, for Plaintiffs.

Abrams & Martin, P.C., (Daniel J. Friedman, Allen A. Kolber, of counsel) New York City, for Defendants.

## OPINION

SWEET, District Judge.

For reasons unrelated to the substance or disposition of these motions, this opinion supersedes this Court's opinion of March 21, 1996, on the same motions in all respects. The Clerk of Court will withdraw that opinion from the record. It will be refiled under seal and superseded by this Opinion in reason and effect.

In this action to recover under insurance policies, Defendants the Marine Insurance Co., Ltd., No. 2 A/C, the Threadneedle Insurance Co., Ltd., the Threadneedle Insurance Co., Ltd., A A/C, Indemnity Marine Assurance Co., Ltd., No. 1M A/C, Norwich Union Fire Insurance Society, Ltd., No. 1 A/C, Sovereign Marine & General Insurance Co., Ltd., S 81, the Tokio Marine & Fire Insurance Co. (UK), Ltd., Taisho Marine & Fire Insurance Co. (Europe), Ltd., Storebrand Insurance Co. (UK), Ltd. (collectively, the "Primary Insurers"), subscribing to policy of insurance number 4S/0034/9/91 (the "Primary Policy"), and Henry Raymond Dumas, an underwriter at Lloyd's, London, on behalf of himself and all those other Lloyd's underwriters (the "Excess Insurers", or, collectively with the Primary Insurers, the "Insurers") subscribing to policy of insurance number 4S/00723/91 (the "Excess Policy" or, collectively with the Primary Policy, the "Policies") have moved 1) for summary judgment against Plaintiffs 6247 Atlas Corporation ("Atlas") and the Merchants Bank of New York (collectively, "Plaintiffs"); 2) to dismiss for failure to state a claim; and 3) for an order compelling the Federal Bureau of Investigation, the United States Attorney for the Southern District of New York, and the New York City Police Department to comply with subpoenas and discovery requests, or, in the alternative, for a stay pending compliance with those subpoenas and requests.

For the reasons discussed herein, the motion for summary judgment will be granted,

and the other motions will, therefore, be denied as moot.

### The Parties

Atlas, a dealer in precious stones, metals, and jewelry, is a New York corporation with its principal place of business located at 2 West 46th Street, Suite 702, in Manhattan (the "Premises"). Its principals are Joseph Harati ("Harati") and Ishai Karniel ("Karniel"). Harati and Karniel are fugitives residing in Israel, having left the United States at least in part to avoid facing charges stemming from the alleged burglary at the Premises.

The Merchants Bank of New York, a corporation chartered under the laws of New York State, is a secured creditor of Atlas.

The Primary Insurers are a syndicate of insurance companies which underwrote the Primary Policy for a twelve-month period beginning on approximately February 7, 1991. The Primary Policy extended insurance coverage to Atlas, as the assured party, and to the Bank, as the loss payee, against risks to Atlas' goods while on the Premises up to a maximum of $1,000,000. The Primary Policy has a $10,000 deductible. An additional endorsement to the Primary Policy was issued for another $1,000,000.

The Excess Insurers issued to Atlas excess insurance coverage under the Excess Policy, which extended additional coverage in the amount of $1,000,000. The Excess Policy incorporated all terms and provisions of the Primary Policy, and Atlas' total coverage was thus $3,100,000, less a deductible of $10,000.

### Facts and Prior Proceedings

#### I. The Burglary

On June 25, 1991, a burglary allegedly took place on the Premises. Atlas submitted a claim seeking indemnification under the policies for goods allegedly stolen. In support of its claim, Atlas submitted a sworn Proof of Loss, wherein it alleged that $6,133,-693.31 worth of merchandise had been stolen. Of those goods, $3,055,121.31 had been taken on consignment from other dealers (the "Memoholders").

After an investigation, Defendants denied liability on the theory that the burglary had been staged and that Atlas had committed fraud, had made misrepresentations, had failed to comply with a sales and transaction clause, and had failed to cooperate with Defendants' investigation.

Plaintiffs filed their Complaint on September 29, 1992, and Defendants answered on December 10, 1992. Subsequently, the remaining memoholders were interpleaded. On April 27, 1995, Defendants filed this motion, and the matter was argued and deemed fully submitted on December 13, 1995.

### II. Atlas' Records

#### A. Accounting Methods

In presenting its claim, Atlas calculated its loss by using a "roll-forward" calculation, which, in contrast to an item-by-item calculation, calculated the value of the inventory at the time of the burglary by taking the value of the inventory on April 30, 1990, adding purchases, and subtracting gross sales, goods left on the premises, and goods outstanding for the "roll-forward period" of April 30, 1990, through June 25, 1991, the date of the alleged burglary.

Among the records kept by Atlas at various times were inventory records, copies of purchase and sale invoices, a sales journal, and a cash disbursement journal. The sales journal generally recorded the date of payment, the customer name, and the amount of sale, but not the type of item sold, the quantity, the size, the quality or weight, or the description. The cash disbursement journal omitted a description of goods sold and the date of receipt.

#### B. The Cash Transactions

Atlas regularly cashed the checks of three costume jewelry companies: Greenlight, Eric Design, and Top Line (the "Cash Transaction Companies"). To justify the deposit of those checks, Atlas would create false sales invoices and make corresponding false entries in its sales journal and cash receipt books. Some merchandise may have, at times, been transferred from Atlas to these companies, but this merchandise did not account for all of the listed transactions. The cash on hand that was distributed to the Cash Transaction Companies came from Atlas' cash sales to

other customers, for whom invoices were not prepared. Those transactions, which were not recorded in the sales journal, amounted to $593,683 in total, $164,596 of which occurred during the roll-forward period.

### C. *The Florida Transactions*

Karniel traded gems and jewelry in Florida on behalf of Atlas. He reported those transactions (the "Florida Transactions"), amounting to $2,369,614 in sales and $2,403,366 in purchases in 1990, on Schedule C of his federal personal income tax return. The returns were prepared by Daniel Turchin ("Turchin"), Atlas's accountant at the time. These items were not included in either Atlas' records or the Proof of Loss.

### D. *The Absent Invoices*

Of the sales set forth in the claim, between $2,262,000 and $3,349,084 in sales and purchase invoices cannot be accounted for. The only records for the sales were entries in the sales journal. Of the purchases without invoices, records are available only in the form of a cash disbursement journal.

## *Discussion*

### I. *The Standard for Summary Judgment*

█ The instant motion is brought pursuant to Rule 56. The motion for summary judgment is "an integral part" of the Federal Rules of Civil Procedure and facilitates the overall purpose of the Rules as stated in Rule 1: namely, "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), Fed. R.Civ.P.; *Silver v. City Univ.,* 947 F.2d 1021, 1022 (2d Cir.1991). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991).

Defendants seek summary judgment based upon Atlas' alleged a) breach of the Sales and Transaction Clause of the Policies; b) fraud during the claim investigation; and c) failure to cooperate with Defendants' investigation of the claim. Because Atlas' principals may well be judgment-proof, and because of the existence of Merchant's Bank's secured loan, the effect of a grant of summary judgment will, in essence, be to deprive Merchant's Bank of the ability to collect on its loan and to benefit the Underwriters by relieving them of liability under the Policies. In contrast, were this action to proceed to the trial stage, and were it determined that the burglary was not staged and Defendants were thus potentially liable, it would be left to the jury to decide if, among other questions, the Sales and Transaction Clause had been breached. Because no genuine issue of material fact has been presented to bar the conclusion that Atlas breached the Sales and Transaction Clause, summary judgment will be granted in favor of Defendants and the other allegations need not be addressed.

### II. *The Sale and Transfer Clause*

█ The Policies required that:

The assured shall keep detailed records of all sales, purchases and other transactions, and that such records shall be available for inspection by the Underwriters or their representatives in the case of a claim being made under this Policy.

Although the type of clause breached by Plaintiffs has become known as a "book warranty" or "record warranty", it does not constitute a warranty as contemplated by Section 3106 of the New York Insurance Law. N.Y. Ins. Law § 3106 (McKinney 1985). Section 3106 defines a warranty as a condition precedent which diminishes "the risk or the occurrence of any loss, damage, or injury within the coverage of the contract." *Id.* The term "occurrence of loss, damage, or injury" includes the occurrence of death, disability, injury, or any other contingency insured against, and the term "risk" includes both physical and moral hazards. *Id.* Sale and transfer clauses, in contrast, are directed at facilitating accurate calculations of claims, not at lessening the risk of loss of the items

insured, and Section 3106 does not, therefore, apply.

 The insurance law circumscribes the effects of statutory warranties, *id.*, and representations, *id.* at § 3105(a), mitigating the effects of breach. However, the effects of conditions precedent are not so mitigated, for

> a distinction exists between a warranty and a condition precedent, in that a breach of the former does not suspend or defeat the operation of the contract, or that furnished by law; while the latter is one without the performance of which the contract, although in form executed by the parties and delivered, does not spring into life.

69 N.Y.Jur.2d § 1070, at 516 (1988). Any breach of the Sales and Transactions Clause, then, constituted a breach of a condition not excused by statute and therefore rendered the Policies voidable by the insurer. *Cf. United States Fire Ins. Co. v. PKFinans Int'l Corp.*, 904 F.2d 169, 170 (2d Cir.1990).

 Under New York law, a policy provision requiring an insured party to keep books and records mandates that "the records in and of themselves should be sufficient to disclose to the insurer the extent of its liability, independently of any need to resort to evidence outside the records to explain the records other than might be necessary to disclose the bookkeeping methods employed." *Globe Jewelry, Inc. v. Pennsylvania Ins. Co.*, 72 Misc.2d 563, 340 N.Y.S.2d 295, 297 (1st Dep't 1973); *see also Lenzner v. National Surety Co.*, 209 A.D. 464, 204 N.Y.S. 796 (2d Dep't 1924); *Harris v. General Accident Fire & Life Assur. Corp.*, 187 N.Y.S. 291 (1st Dep't 1921). Three faults in Atlas' record-keeping thus suffice to remove any genuine issue of material fact that its books were insufficiently detailed to meet the terms of the Sales and Transactions Clause: 1) its falsification of its transactions with Greenlight, Eric, and Top Line; 2) its failure to account for the Florida transactions; and 3) the absence of the missing invoices. Given these falsifications and omissions, no reasonable finder of fact could deem the records sufficient in and of themselves without resort to extrinsic evidence. *See Globe Jewelry*, 340 N.Y.S.2d at 297.

Plaintiffs assert that New York courts have held that record-keeping provisions should be loosely construed. *See Mord' v. New York Indem. Co.*, 216 A.D. 252, 214 N.Y.S. 693 (2d Dep't 1926). Indeed,

> where there is evident merit in the claim, and the insured has made a *bona fide* effort to comply with the provisions of the policy in keeping honest books and accounts, however crude and unscientific they may be, the courts will adopt a liberal interpretation of what constitutes books of account, to the end that the insurer will be helped to perform its contract.

*Garten v. General Accident, Fire & Life Assur. Corp.*, 206 A.D. 154, 200 N.Y.S. 546, 547 (4th Dep't 1923); *see also Mord*, 214 N.Y.S. at 696. Here, no reasonable finder of fact could deem Atlas to have made a *bona fide* effort to keep detailed records. The deliberate omission of the Cash Transactions, the Florida Transactions, and the Absent Invoices present a pattern of confusion at best and outright deceit at worst. As the New York Court of Appeals noted in a similar case:

> Within the meaning of the contract of insurance, honest books and vouchers, though the entries be made in a crude, unscientific manner and require explanation and even supplement by oral statement, may yet supply the basis for an accurate estimate of the loss. At least, however, the books must be intended to reflect truly the cost or value of the goods insured. Books intended to deceive are not in any true sense books of account.

*Licht v. New York Indem. Co.*, 250 N.Y. 211, 164 N.E. 910, 911 (1928). Given Atlas' principals' admission that the books were altered in order to deceive, its records cannot be deemed sufficient to meet the requirements of the Sales and Transaction Clause.

Plaintiffs note that New York cases that have examined alleged breaches of books and records clauses have done so only where those clauses have required records sufficiently detailed to enable the insurer to determine accurately the *exact* amount of loss. *See, e.g., Harris*, 187 N.Y.S. at 292. They

argue that because the Sales and Transaction Clause did not include such stringent language, the omissions cited by Defendants did not render Atlas' records so undetailed as to constitute a breach of that clause, particularly in light of the diamond trade's practice of keeping less detailed records. In a related argument, Plaintiffs contend that the cases that have found records insufficiently detailed are distinguishable by virtue of the fact that the insured parties kept books that were utterly untrustworthy or entirely lacking in meaningful detail. *See Garten*, 200 N.Y.S. at 547 (no way of determining amount of sales without resort to memory); *Harris*, 187 N.Y.S. at 292 (absolutely no assessment of loss possible and no gross profit percentage available); *Licht*, 164 N.E. 910 (garment dealer entered false value in books for every garment in inventory to deceive customers); *see also Globe*, 340 N.Y.S.2d at 297. In contrast, they note, here Atlas provided insurers with a sales journal, a cash disbursements journal, a purchase journal, a cash receipts journal, a checkbook and stubs, two recent inventories, memoranda of goods, and purchase invoices, which present a clear indication that policy limits were reached.

New York courts, however, have held that "wherever possible, operation, effect and meaning must be given to every sentence, clause and word of an insurance policy...." *Facet Indus. Inc. v. Wright*, 95 A.D.2d 262, 465 N.Y.S.2d 941 (1st Dep't 1983), *rev'd on other grounds*, 62 N.Y.2d 769, 477 N.Y.S.2d 316, 465 N.E.2d 1252 (1984); *see also Bretton v. Mutual of Omaha Ins. Co.*, 110 A.D.2d 46, 492 N.Y.S.2d 760, 763 (1st Dep't 1985). Here the Policies required that there be records of all transactions and that the records be detailed. Clearly, there are not records of nearly all the transactions engaged in by Atlas during the roll-forward period. Further, to give meaning to the term "detailed", Atlas must have kept more than simple records. Typical record entries included merely payee, date of payment, and amount of payment. It is precisely the purpose of the books and records clause to avoid the necessity of consulting any other source but the insured's books and records to prove the loss. Here, Defendants would be: "forced to rely on the statements of the plaintiffs or of any other person for the amount of the loss [and] forced to rely on their recollection, knowledge or memory." *Harris*, 187 N.Y.S. at 293.

Plaintiffs attempt to demonstrate that each of the three categories was not material and did not cause prejudice. The Cash Transactions, they note, amounted to only $164,596 for the roll-forward period—less than 2.5% of the $6,695,015 in total sales claimed. In any case, they argue, the sales figures Atlas submitted were unaffected by these transactions, because each was recorded and represented an actual sale to individual parties paying cash and not wanting invoices. As to the Florida Transactions, Defendants contend that the transactions were not included in Atlas's calculation of the claim submitted by the insurers and would, in any case, have increased inventory by $33,752, not reduced it. They contend that many invoices provided details, that those that were undetailed merely reflect the diamond trade's customary practice, and that those that are missing may have disappeared in the hands of Defendants. Finally, Plaintiffs argue that even if all of the transactions in question are omitted from its claim, the claim would still exceed $5 million, providing a margin of safety sufficient to provide detail. Plaintiffs' expert witness set forth three credible scenarios through which Defendants might be able to calculate the actual loss.

█ As noted above, however, the Sales and Transaction Clause constitutes a condition, and, unlike a warranty or misrepresentation, immateriality or lack of prejudice does not limit the effects of breach. The issue, then, is not whether Defendants could, in principle and through leaps of faith, calculate the amount of loss. The failure to meet the condition set forth in the Sales and Transaction Clause by omitting and falsifying information constitutes breach regardless of materiality or prejudice.

Moreover, the inconsistencies and discrepancies in the records for the roll-forward period cast doubt on the veracity of the inventories reported before the roll-forward period, which themselves lacked substantial detail.

For these reasons, the Sales and Transactions Clause was breached as a matter of law, and summary judgment will be granted to Defendants.

*Conclusion*

Any objection urged by a party on which the Court has not commented has been considered by the Court and rejected as irrelevant or meritless.

Because Atlas breached the Sales and Transaction Clause of the Policies, summary judgment will be entered in favor of Defendants. As a result, the other motions will be denied as moot.

It is so ordered.